May Term, 1858.

REESE
v.
COCHRAN.

---

REESE *v.* COCHRAN, Administrator.

At common law, coverture disabled the wife to convey her property, real or personal, without the consent of her husband, unless by virtue of some trust or power of appointment.

The provisions of our statutes enlarging the rights and increasing the powers of married women touching property, were not intended "to destroy the community of interest between husband and wife," &c., but rather, to secure to married women, during their lives, such means of support as they might possess, for themselves and families.

*It seems*, that a general statute giving power to make wills, will not be construed to embrace persons under common-law disabilities.

By our statutes, a married woman cannot convey her separate property, either real or personal, without the consent of her husband.

APPEAL from the *Hamilton* Circuit Court.

PERKINS, J.—Suit by *David Cochran*, administrator of the estate of *Mary Cochran*, deceased, against *Reese*, upon promissory notes.

Answer, that on the 28th day of *August*, 1855, *Mary Cochran*, then the wife of the plaintiff, *David*, being the owner in her own right, and the payee, of the notes sued on and others, amounting in the aggregate to the sum of 760 dollars, and being upon her death bed, and desirous of disposing of the proceeds of the notes among certain of her friends, delivered the notes to one *Elizabeth Mahen*, to be by her delivered to the defendant *Reese*, immediately upon the decease of the said *Mary*, with instructions to him to collect, and distribute the proceeds thus: 400 dollars to

*Thursday, May 27.*

himself, 200 dollars to the plaintiff, 100 dollars to said *Elizabeth Mahen*, and 60 dollars to one *Euphemia Mahen;* that said plaintiff, her husband, assented to the disposition; that said *Elizabeth* accepted the notes upon the conditions specified; that about two days thereafter, said *Mary* departed this life, but that said *Elizabeth* failed to fulfill her trust, and surrendered the notes to the plaintiff, late said *Mary's* husband.

Reply in denial.

Trial. Judgment for the plaintiff.

The evidence is upon the record. It shows the delivery of the notes to *Elizabeth*, the death of *Mary*, and the subsequent surrender of the notes to the plaintiff. It does not show when the parties were married, when, or from what source, the moneys for which the notes were given, came to the payee thereof, *Mary*, nor the relationship, except as to the plaintiff, of those to whom the proceeds were to be distributed, though the notes appear to have been her separate property. As to the consent of the plaintiff, husband of *Mary*, to the arrangement, we cannot, in view of the finding of the jury, regard it as having been given, though it appears that, owing to her dying state, he declined to disturb her, saying to her not to mind about him, he could get along some how, to die in peace.

We shall waive the question whether, conceding the power in the donor, the facts show that a valid delivery of the notes, as a *donatio mortis causa*, was made. See this point examined in Williams on Personal Property, 2d Am. ed. p. 355.

We shall consider the question of power.

At common law, coverture disabled the wife to convey her property, real or personal, without the consent of her husband (2 Kent, 129 to 150), unless by virtue of some trust or power of appointment. Williams on Personal Property, top p. 409, *et .seq.* See *Grimke* v. *The Executors of Grimke*, 1 Desaussure, 366. Our later statutes have made many changes in the relation and powers of husband and wife, the precise extent of which is not easily determined, and must depend, therefore, much upon construc-

tion.  This construction must be the work of the Courts;
and in performing it, they should keep a steady eye to the
intention with which the legislature enacted the statutes,
if it is possible to discover that intention.

Judge GOOKINS, himself a leading member of the body
that enacted our present code, in *Mc Carty* v. *Mewhinney*,
8 Ind. R. 513, says:

"The object of these innovations seems to have been to
destroy the community of interest between husband and
wife, as far as possible—rendering it less identical than in
an ordinary partnership."

We are unwilling, without the clearest evidences, to con-
cur in this opinion.  When we consider the infinite im-
portance in its bearing upon the welfare of families, and of
society, and upon the public morals, of family unity and
harmony, and the baleful influence of legislation calculated
to disorganize that unity, destroy that harmony, by divid-
ing families, houses, against themselves that they cannot
stand, it will induce us to be slow in attributing such a de-
sign to our legislators.  We rather conclude that the ob-
ject was, to secure to married women, during their lives,
who might unfortunately have spendthrift husbands, such
means of support as they might possess, for themselves and
families.  This would be an object worthy the legislature,
and in accordance with the dictates of reason and justice.

Guided by this idea, and a well settled legal principle
that statutes in derogation of the common law must be
strictly construed, we proceed to ascertain the meaning of
the statutes enlarging the rights and increasing the powers
of married women touching property.

1.  Can they dispose of their separate property by will?

Our statute of wills does not expressly except married
women from its operation (2 R. S. p. 308); but the weight
of authority seems to be, that a general statute giving
power to make wills, will not be construed to embrace per-
sons under common law disabilities.  1 Jarman on Wills,
top p. 35.—4 Kent, 505.  And that such was the view of
our legislature, seems strongly implied by § 16, 1 R. S. p.
504, which enacts that "A general and beneficial power

may be given to a married woman, to dispose of or devise, without the concurrence of her husband, lands conveyed or devised to her in fee." Such was the common law. But this point we will now neither decide nor discuss, as it is not material in the present case. It is not put upon the ground of a will. See Wentworth on Executors, ed. by *Ingraham*, p. 362.

2. Can married women dispose of their property by a conveyance?

Section 5, 1 R. S. p. 321, enacts that—" No lands of any married woman, shall be liable for the debts of her husband; but such lands, and the profits therefrom, shall be her separate property, as fully as if she was unmarried; *provided* that such wife shall have no power to encumber or convey such lands, except by deed, in which her husband shall join."

This section does not authorize the conveyance of the estate, but forbids it. The wife, then, cannot dispose of her real estate without the consent of her husband. The provision quoted, we may remark, in passing, would not authorize a disposition by will. *Beach* v. *Manchester*, 2 Cush. (Mass.) 72.

Touching her personal estate, it is enacted by § 5, p. 57, Acts of 1853, that—

" The personal property of the wife held by her at the time of her marriage, or acquired during coverture by descent, devise or gift, shall remain her own property to the same extent, and under the same rules, as her real estate so remains; and on the death of the husband before the wife, such personal property shall go to the wife, and on the death of the wife before the husband, shall be distributed in the same manner as her real estate descends, and is apportioned under the same circumstances."

As she cannot convey her real estate without the consent of her husband, and holds her personal with the same extent of right as she does her real, it would seem to follow that the wife was not empowered by the statute to dispose of her personal property without the consent of her husband. See *The Junction, &c. Co.* v. *Harris*, 9 Ind. R. 184. That

she can retain the possession of her personal, and the income of her real estate, and the use of both, as exempt from sale for her husband's debts, and as exempt from his power to appropriate them for that purpose, would seem to be clear; but that she cannot convey them away to others, without his consent, during coverture, seems equally clear. Upon the questions of the husband's consent, and of any ante-nuptial agreement, in this case, we cannot interfere with the finding below. From what has been said, it follows that the attempted disposal of the notes in question was invalid; that they remained the property of the wife at her death, going to her administrator to be collected, and the proceeds appropriated, according to the direction of the statute.

*Per Curiam.*—The judgment is affirmed, with 1 per cent. damages and costs.

D. *Moss* and W. *Garver*, for the appellant.

G. H. *Voss*, for the appellee.