No. 8265.

SMITH, ADM'R, *v.* SMITH ET AL.

Married Woman.—*Disability to Contract.—Settlement.—Receipt.—Husband and Wife.*—Under the laws prior to 1881, a married woman was under a general disability to make personal contracts. If indebted, she could not, without the consent of her husband, bind herself by a settlement, accord and satisfaction, account stated, or by a receipt based on such adjustment. Neither could she, without such consent, set aside a settlement made before marriage, and so revive against herself obligations which had been extinguished in such settlement.

Same.—*Promissory Note.*—A married woman desiring to sell her real estate for $1,000, and her husband refusing to join in conveying at a price less than $1,500, she thereupon agreed with the purchaser that the conveyance should be made and he should give his notes and mortgage upon that basis, and that she would give him a credit on the notes for the difference. She did accordingly, afterward, without the husband's consent, give a receipt for a sum to be credited on the notes.

*Held,* in an action by the administrator of the wife upon the note, that the receipt was a nullity.

Practice.—*Refusal of Party to be Examined.—Striking out Pleadings.—Notice.*—It is not error to refuse to strike out a party's pleadings because he refused to be examined unless notice was given to other adverse parties of the time and place of such examination.

From the Cass Circuit Court.

*G. E. Ross,* for appellant.

*H. C. Thornton* and *W. W. Thornton,* for appellees.

Woods, J.—Suit by the appellant as administrator of the estate of Catharine E. Smith, to foreclose a mortgage and to obtain judgment on the overdue notes secured thereby, executed by the appellee James H. Smith to the said Catharine when in life.

The second paragraph of answer is to the effect that on the 10th day of May, 1877, said Catharine received of the defendant John H. Smith, on said notes and mortgage, the sum of six hundred dollars and executed to him a receipt therefor, a copy of which is filed with the plea.

The third paragraph of the answer sets up, that on the 10th day of May, 1877, the defendant John H. Smith had a settlement with the said Catharine, wherein it was found that she was indebted to him in the sum of six hundred dollars, which she then and there received and allowed as a payment on the notes and mortgage, and concurrently therewith executed her receipt to him in the words and figures following: " Received. May 10th, 1877, of John H. Smith, six hundred dollars, to be applied on mortgage held by me against John H. Smith." Signed, " Catharine E. Smith."

The fourth paragraph of reply, which was addressed to these answers, was to the effect that at the time of the alleged execution of said receipts the said Catharine was the wife of the plaintiff; that she did not then receive, nor had she theretofore received, any money payment on said notes and mortgage ; and that the plaintiff did not consent to the making of the alleged settlement nor to the giving of the receipts.

To this reply the court sustained a demurrer, for want of facts stated sufficient to make a good reply, and the appellant's exception to this ruling presents the principal question to be decided.

It is not disputed by counsel, that, under the law as it was at the time of this transaction, it was competent for a mar-

ried woman to receive money upon obligations held or owned by her, and give valid receipts therefor, and we need decide nothing on that point; but it is contended that, without the consent of her husband, she was not permitted to receive and give credit for anything besides money, nor to make a settlement or adjustment of accounts between herself and her debtor, and give him a valid credit, or receipt for a balance or amount so determined to be due from her to him.

The general disabilities of married women, in the absence of statutory power, to hold and dispose of property, and to make contracts binding upon themselves personally, is well understood. But the gross injustice and oppression of the common law rules have been long since in some degree corrected, if not abolished, by the more liberal legislation of civilized States. For the latest enactment and present condition of the law of this State on the subject, see the Revision of 1881, chapter 71. The case before us, however, must be determined by reference to earlier statutes.

The act of March 4th, 1853, contained the following section, which was validly enacted and remained in force at the time of the transaction in question:

"Sec. 5. The personal property of the wife held by her at the time of her marriage, or acquired during coverture by descent, devise, or gift, shall remain her own property to the same extent and under the same rules as her real estate so remains, and on the death of the husband before the wife, such personal property shall go to the wife, and on the death of the wife before the husband, shall be distributed in the same manner as her real estate descends, and is apportioned under the same circumstances." 1 R. S. 1876, p. 412.

Concerning her real estate, the provision of law necessary to be considered is as follows:

"No lands of any married woman, shall be liable for the debts of her husband; but such lands and the profits therefrom, shall be her separate property, as fully as if she was unmarried: *Provided,* That such wife shall have no power to

encumber or convey such lands, except by deed, in which her husband shall join." Act of May 31st, 1852, sec. 5, 1 R. S. 1876, p. 550. It has been held under these statutes, that a married woman can not convey her separate property, either real or personal, without the consent of her husband. *Reese* v. *Cochran,* 10 Ind. 195; *Scott* v. *Scott,* 13 Ind. 225; *Collier* v. *Connelly,* 15 Ind. 141; *Moreau* v. *Branson,* 37 Ind. 195.

That the appellant's wife had no power, without his consent, to make a gift or a voluntary release of her demand to her debtor, is too clear to admit of discussion. The second plea alleges that the receipt was given for money paid upon the debt. The reply is that no money was or had been paid; and this being equivalent to an averment that the receipt was made without consideration, is perhaps a sufficient reply to that plea.

The question upon the other paragraph of the answer, which alleges a settlement wherein it was found that the deceased was indebted to the appellee in the amount of the receipt, is different. It is not alleged that there was an actual indebtedness, but that upon a settlement made an indebtedness was found or agreed upon. The reply shows it was not for money then or theretofore received by said Catharine. This, however, does not exclude the idea of a valid debt or liability of the said Catharine to the appellee, which was the subject of the settlement. Such liability could not, of course, have arisen out of any transaction, contract or purchase, made after her marriage, because she was thereafter under disability; but while a *feme sole* she may have incurred liabilities which were brought into such adjustment. This brings us to the question whether a married woman, who is indebted personally, might, under the laws quoted *supra,* without the consent of the husband, have made a valid and binding settlement, or accord and satisfaction, or an account stated, which could be set up or pleaded against her as such.

The making of such adjustments necessarily implies the power to make contracts concerning the matters settled, and

to impose personal obligations upon herself; resulting, it might be, in the indirect, if not immediate, transfer or loss of her property, either real or personal. This she could not do. If the appellee in fact had lawful demands against the said Catharine, he might have pleaded them as a set-off, and in that way have obtained the proper credit; but whether his claims against her were just or unjust, no settlement or agreement made with her, while under coverture, without the consent of the husband, can be made available in the manner it is here sought to be done.

Whether, if the defendant had pleaded payment simply, or set-off, as suggested above, he could have used the receipt as evidence, in the nature of an admission, it is not necessary to decide.

Upon the trial it was shown that the notes and mortgage in suit were given by the appellee Smith for the interest of said Catharine in the mortgaged land; that they had agreed upon $1,000 as the consideration, but the appellant refused to join in the deed for that price; thereupon she agreed with the appellee, that, if he would purchase at the price of $1,500, she would afterward allow him a credit for the excess over $1,000, and, for the purpose of carrying out this agreement, the receipt in question was made, without the consent or knowledge of the appellant. For all other demands of the appellee against his sister, the said Catharine, he had, before the purchase of her interest in the land, upon a sufficient consideration, executed a release and discharge. The demands so discharged, therefore, did not constitute a valid consideration for the receipt, and, without the consent of her husband, the said Catharine had no power to restore them to vitality, however just they may have been, and however inadequate the consideration for the release may have been.

It is equally clear that her agreement to allow a credit on the notes and mortgage was a nullity, and furnished no consideration for the receipt. If it were not an attempt to vary by parol the written agreement of the parties, her coverture

prevented its having any binding force. So that, if the appellant had consented to the giving of the receipt, the receipt would not have constituted a binding obligation to give the credit stipulated for. Irrespective of the pleadings, therefore, the verdict was clearly contrary to the law and the evidence.

The appellant complains of the action of the court in refusing to strike out the answer of the appellee Smith. The appellant sought to examine the appellee as a party to the action, before the trial; the appellee attended at the time and place fixed in the notice, which was duly served upon him, but refused to answer or to be examined, without offering any excuse for the refusal, so far as appears in the record. The only reason we can find in the record before us for the refusal of the court to strike out the answer is in the fact that it does not appear that notice of the examination was given to the said appellee's co-defendant. The statute prescribes "a previous notice to the party to be examined, and any other adverse party, of at least five days, unless for good cause shown, the court order otherwise." No order of the court, relieving the appellant from the necessity of giving notice to the other defendants, is shown. We can not, therefore, say that the court committed any error in this respect.

The points decided make all other questions immaterial.

The judgment is reversed with costs, and with instructions to overrule the demurrer to the fourth paragraph of reply.

Petition for a rehearing overruled.