*H. W. Harrington* and *C. A. Korbly*, for appellant.

*C. E. Walker* and *A. D. Matthews*, for appellees.

---

JACKSON *v.* FINCH.

DESCENTS.—WIFE'S PORTION.—Under section 17 of the statute of descents of 1852, the wife takes an interest of one-third in fee in the lands of her deceased husband. Section 18 of the same statute merely suspends the wife's power of alienation during subsequent marriage.

SAME.—Section 18 is a rule of descent, and not a limitation of the estate of the widow in the lands of her deceased husband.

SAME.—A died seized in fee of real estate, and left surviving him a widow, and three children by her. The widow, not having disposed of her interest in the real estate, married B, and afterwards, with her husband, entered into a contract with C to convey to him the one-third of said real estate; and C, thereupon, in B's presence, paid to her a first installment of the purchase money. C afterwards brought an action against B and wife to recover back this installment.

*Held*, that, as B and wife could not, during coverture, alienate lands held by the wife by descent from a former husband, there was an entire failure of consideration, and C was entitled to recover the purchase money.

*Held*, also, that as B executed, with his wife, a receipt for the purchase money, and the same was paid to her in his presence, he was answerable to C for the money.

PRACTICE.—The fact that a cross-complaint is demurrable will not justify the court in dismissing it.

SAME.—But if the cross-complaint could not have been amended so as to make a cause of action, the error will not reverse the judgment.

APPEAL from the *Wayne* Circuit Court.

GREGORY, J.—*Jackson* sued *Finch* and his wife to recover back money paid on an executory contract for the sale of

land. A demurrer was sustained to the complaint, as to the wife. The issues between the plaintiff and the husband were submitted to a jury. Verdict for the defendant. Motion for a new trial overruled and exceptions filed. The evidence is in the record.

*Catharine Finch*, the wife of the defendant, was the widow of *Christian Neff*, deceased. The latter died in 1858, intestate, seized of the land which is the subject of the contract, leaving him surviving *Catharine*, his widow, and three children by her, two of whom still survive. Before the contract was made for the sale of the land, the widow married the appellee, *Pettis Finch*. In *October*, 1863, the appellant purchased the land of *Catharine* and her husband, agreeing to give $2,500 therefor, nine hundred dollars of which was paid at the time to the wife, and the following receipt given:

"Received of *Joseph Jackson*, the sum of nine hundred dollars, as the first payment on the undivided one-third of the farm of which *Christian Neff* died seized, and which said undivided one-third we have this day sold to the said *Jackson*, for the sum of twenty-five hundred dollars.

"*October* 24th, A. D. 1863.

(Signed,)
　　　　　　　　　　　　　　　　his
　　　　　　　　　　"PETTIS ✕ FINCH,
　　　　　　　　　　　　　mark.
　　　　　　　　　　"CATHARINE FINCH."

The land is in *Wayne* county. The contract was made in *Illinois*. The contracting parties not having, at the time, a description of the land, it was agreed that *Charles H. Burchenal*, who had a power of attorney for that purpose, should, as the attorney in fact for *Finch* and wife, make the deed to *Jackson*, upon which the latter was to execute his notes and mortgage for the residue of the purchase money. *Burchenal* made a quitclaim deed and tendered it to *Jackson*, but the latter refused to accept it, demanding a warranty deed. This suit was brought to recover back the nine hundred dollars.

After the demurrer was sustained as to the wife, she filed her cross-complaint for the specific performance of the contract. The court permitted the plaintiff to withdraw his answer thereto, and, on the plaintiff's motion, dismissed the cross-complaint. This is assigned for error by the wife. The cross-complaint set forth that the wife derived her title by descent from her late husband, and that there were children alive, the fruit of her marriage with the husband who died seized of the land. On the trial, the court instructed the jury that "if *Finch* and wife sold the wife's interest in the real estate, and agreed to make a warranty deed for the same, and at the time of sale represented to the plaintiff that the wife had good right to sell and convey the same in fee simple, and if *Jackson* relied upon said statements and believed them to be true, and if it turns out that the wife had no title that she could convey in fee simple, but that she could only convey a life estate, the plaintiff, in that case, would have a right to a return of the purchase money paid; and if the defendant *Pettis Finch* received the nine hundred dollars paid by *Jackson* on the purchase, the plaintiff is entitled to a judgment for that amount, with interest from the commencement of this suit. *But if the plaintiff, at the time he purchased the land, was well acquainted with all the circumstances connected with the title of Catharine Finch, but was mistaken as to the law in relation to her title and her right to convey the same; and if a quitclaim deed has been tendered, conveying the interest of Catharine Finch, the plaintiff, in that case, has no right of action, and cannot recover in this suit.*" That part of the foregoing instruction in italics was excepted to by the appellant.

The court below also instructed the jury, that under the facts of the case, the defendant and his wife could not, at the time of the alleged agreement, either jointly or severally, alienate the real estate in fee simple, and refused to instruct them, that, under the facts of the case, *Finch* and wife could not, at the time of the alleged agreement, either

jointly or severally, alienate the land. Exceptions were taken to these rulings.

The court below also instructed the jury, that "if the plaintiff, knowing Mrs. *Finch* to be a married woman, contracted with her for the purchase of her title to real estate, and paid a sum of money to her or her attorney, and such money was never received or used by the defendant, but has remained under the exclusive control of the wife, and has been invested in the purchase of property in her name, then the plaintiff cannot recover said sum of money from the defendant, notwithstanding he may have been present at the making of the contract, and joined with the wife in signing a receipt for such purchase money." To the giving of this instruction the appellant also excepted.

The giving of these instructions, and the refusal to give the one asked by the appellant, are the grounds of the motion for a new trial. Could Mrs. *Finch* alienate the land in question during her marriage with the defendant? The statute of descents provides that "if a widow shall marry a second or any subsequent time, holding real estate in virtue of any previous marriage, such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate; and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be." 1 G. & H., § 18, p. 294. This is only a suspension of the wife's power of alienation during her marriage with the second or subsequent husband. It is provided by section 17 of the same statute, that "if a husband die, testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors." The wife takes a fee simple interest in the lands of her deceased husband under this statute. *Barnes et al.* v. *Allen et al.*, 25 Ind. 222.

The wife, in the case in judgment, had a fee simple in an undivided one-third of the lands of which her late husband died seized, with the power of alienation suspended during

coverture. Section 18, *supra,* is a rule of descent, and not a limitation of the estate of the widow in the lands of her deceased husband. *Philpot et al.* v. *Webb,* 20 Ind. 509. See also *Goodrich et al.* v. *Myers et al.,* 25 Ind. 10. The court below erred in the instructions given, and in the one refused. As the wife had no power of alienation, there was an entire failure of consideration, and the appellant can recover back the money paid.

Mr. *Parsons* states the rule thus: "When the consideration appears to be valuable and sufficient, but turns out to be wholly false, or a mere nullity, or where it may have been actually good, but before any part of the contract has been performed by either party, and before any benefit has been derived from it to the party paying or depositing money for such consideration, the consideration wholly fails, then a promise resting on this consideration is no longer obligatory, and the party paying or depositing money upon it can recover it back." 1 Parsons on Con. 462.

The impossibility of performing the agreement of sale was personal to the promissor, which might not continue, and the fault in contracting to do that which she could not do, was imputable to her, and not to the appellant; and the fact that the latter was acquainted with all the facts was no answer to the action. See 1 Parsons on Con., pp. 460, 556, note *w.*

The wife parted with nothing. The husband was present, taking part in the transaction, signing a receipt in which the sale is stated to have been made by the husband and wife. Under such circumstances, the wife's possession of the money is, in law, the possession of the husband. The latter is answerable to the appellant for the money thus paid over to the wife. She can have no separate property in the money, for the reason that no consideration passed from her. The promise to convey, if valid, was binding alone on the husband.

The court below erred in overruling the appellant's motion for a new trial. The fact that the cross-complaint of

the wife was demurrable, did not justify the court in dis-missing it. But this is not an available error. By no pos-sibility, under the facts alleged and proven in this case, could the cross-complaint be amended so as to make a cause of action in favor of the wife.

The judgment is reversed, with costs, and the cause re-manded to said court, with directions to grant a new trial, and for further proceedings.

### ON PETITION FOR A REHEARING.

GREGORY, J.—An earnest petition for a rehearing, and *dicta* in *Blackleach* v. *Harvey*, 14 Ind. 564, seem to require some further notice of the main question involved in this case. The learned judge who delivered the opinion in that case, says: "The statute of GLOUCESTER prohibited the alienation by the widow of the estate assigned to her as dower, but it was held that an alienation for life simply, being no more than her interest, as it worked no wrong to her heirs, was not within the statute," and cites Mr. Chitty's note to Black-stone, in support of this statement. That note is this: "The mischief before the making of this statute," (Glou-cester C. 7,) "was not where a gift or feoffment was made in fee or for term of life of a stranger, by tenant in dower; for, in that case, he in the reversion might enter for the forfeiture and avoid the estate. But the mischief was, that when the feoffee, or any other, died seized, whereby the entry of him in the reversion was taken away, he in the re-version could have no writ of entry *ad communem legem* until after the decease of tenant in dower, and then the warranty contained in her deed barred him in the reversion if he were her heir, as commonly he was; and for the reme-dy of this mischief this statute gave the writ of entry *in casu proviso* in the lifetime of tenant in dower." 2 Inst. 309. "But the statute was not intended to restrain tenant in dower from aliening for her own life, for alienation for such an estate wrought no wrong."

This was so held in the application of a remedial statute, enacted for the purpose of providing a remedy for an existing evil, and in so holding there was no violation of the plain words of the statute. That statute prohibited the "alienation of the lands" assigned to the widow for dower, on the pain of forfeiture of her right. The estate of the widow was that of tenant in dower; there was no prohibition, in words or by implication, against the alienation of this estate. The same observation exactly may be made as to the statute *de donis*, which contained no language limiting the power of alienation of the tenant in tail, further than was necessary to protect the heir and reversioner. This done, the mischief, for remedy whereof that statute was enacted, was prevented, and the whole purpose of the statute accomplished.

But in the statute under consideration, there was a new estate created for the first time in the widow—that of an estate in fee in a specified portion of the lands of the husband. The eighteenth section is a provision in relation to the manner in which this new estate was to be held, so far as her power of alienation is concerned. There was no existing evil to be remedied. There is nothing to guide us as to the intention of the legislature but the plain and obvious meaning of the words of the statute. Indeed, the language is so plain that it does not admit of interpretation: "such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate." Her estate is a fee. That estate, by the express words of the statute, cannot be alienated during her second or subsequent marriage. It is contended that a less estate may be alienated by her, and that the quitclaim deed passed that estate. According to the appellee's own evidence, she contracted to sell her interest in the land of her late husband. This she could not do. Her offer to convey a less interest than that which she contracted to convey, was not a compliance with her contract. The contract being executory, the appellant had the right to rescind and recover back the money paid

by him. This does not belong to the class of cases where money paid by mistake of law cannot be recovered back. The fact that the wife of the appellee had no present power of alienation, although known to the appellant, does not bar him of the right to recover back the money paid by him on the executory contract. Mrs. *Finch* promised to convey her interest in the lands of her late husband. This she could do on the death of her present husband; but before this event happens, the time for the performance of her promise arrives. It was her fault that she promised to do that which she had no present power to do. The disability was personal to her. *Jackson* did not get what he contracted for. The cases cited by counsel in the petition for a rehearing do not meet this case.

The petition for a rehearing is overruled.

*J. B. Julian, J. F. Julian* and *J. P. Siddall*, for appellant.

*C. H. Burchenal*, for appellee.