## FORGY v. DAVENPORT.

[No. 18,057.  Filed December 15, 1896.]

HUSBAND AND WIFE.—*Wife's Separate Estate.—Widow Remarrying.—Right of Alienation.—Descent.*—The provision of section 2641, Burns' R. S. 1894 (2484, R. S. 1881), that if a widow shall marry a second or subsequent time, holding real estate by virtue of any previous marriage and there be children alive by such marriage, she cannot alienate such real estate during such second or subsequent marriage, does not preclude her from leasing the real estate for the period of her natural life.

From the Miami Circuit Court. *Reversed.*

*Mitchell, Antrim & McClintic* and *Nelson & Myers*, for appellant.

*Pettit & Stitt*, for appellee.

McCABE, J.—The appellee brought suit in the Wabash Circuit Court to set aside a written lease by her to appellant of certain lands, situate in Wabash county, and to quiet her alleged title thereto. The venue was changed to the Miami Circuit Court.

That court overruled a demurrer to the complaint for want of sufficient facts, and the defendant refusing to plead further or amend, the plaintiff had judgment.

It appears from the complaint that John McEnderfer died on December 1, 1886, seized in fee-simple of certain lands in Wabash county, particularly described among which was the 123 acres of land now in controversy, leaving surviving him the plaintiff as his widow, and Eldora McEnderfer, who is still living, and a minor, the fruit of said marriage, as his only heirs at law; that said 123 acres was duly set off to said plaintiff in partition proceedings as her undivided interest in the realty of which her said husband died seized; that afterward, on January 1, 1889, the plaintiff intermarried with John H. Davenport, who is still living, and she has ever since been and is now his lawful wife; that thereafter, to-wit: on January 15, 1892, and while still the wife of said Davenport and the owner of said land, she and her said husband executed to the defendant a lease of said land for the consideration of $1,000.00 for the term of her natural life, reading as follows:

"January 15, 1892.

"This agreement witnesseth, that for and in consideration of the sum of $1,000.00, this day paid Sarah M. Davenport by Geo. B. Forgy, of Cass county, Indiana, the receipt whereof is hereby acknowledged, Sarah M. Davenport and John H. Davenport, of Wabash county, Indiana, have this day leased to George B. Forgy, of Cass county, Indiana, for the term of the

natural life of said Sarah M. Davenport, the follow-
ing lands in Wabash county, Indiana, to-wit: The
south 123 acres off of the south end of the east half of
section 6, town 29, north of range 6 east, being the
same lands mortgaged as described in Record 4, at pp.
30 and 31, of the mortgage records of Wabash county,
Indiana.

SARAH M. DAVENPORT.<br>JNO. H. DAVENPORT."

"Acknowledged January 15, 1892; recorded Jan-
uary 19, 1892, in O 38."

That defendant caused said instrument to be duly
recorded in the records of Wabash county aforesaid,
on January 19, 1892, in record O, and has ever since
claimed, and now claims, that the same is in full force
in law; that said lease is void; that defendant is claim-
ing to be entitled to possession under said lease, which
casts a cloud upon plaintiff's title and fee-simple own-
ership. Wherefore plaintiff prays the court that de-
fendant's claim be declared null and void and that
plaintiff's title to said real estate be quieted.

The precise question here involved has never yet
been decided by this court, though a great many de-
cisions have been made from which the inference may
be drawn that a lease of the kind here involved would
be void. The most prominent of that kind of cases, and
the one most relied on by the appellee to sustain the
ruling of the trial court in holding the lease void, is
*Vinnedye* v. *Shaffer*, 35 Ind. 341. That was an attempt
to foreclose a mortgage executed by a married woman
and her husband on real estate held by her in virtue of
a previous marriage. The eighteenth section of the
statute of descents then read: "If a widow shall
marry a second or any subsequent time, holding real
estate in virtue of any previous marriage, such widow

VOL. 146—26

may not, during such marriage, with or without the assent of her husband, alienate such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be."

This court said in that case that: "The restraint upon alienation, by the terms of the statute, is as absolute where there are no children of the marriage in virtue of which she received the property, as where there are. The object of the statute seems to be two-fold, first to protect a woman who has thus received real estate by virtue of a former marriage from improvident and injudicious alienations thereof during a second or subsequent marriage, and second, to preserve the property for the children of the marriage in virtue of which she received it, where there are such children, in case of her death during such second or subsequent marriage."

It was held that the mortgage was in some sense an alienation and fairly within the prohibition of the statute, because it might in many cases be an indirect mode of alienation, thereby violating the maxim, that what cannot be done directly cannot be done indirectly.

The court refused to follow the contention of counsel in that case, that the wife might alienate an estate in such real estate, during her life and the fee conditionally, because it would defeat one of the purposes of the statute, namely to protect her against improvident and injudicious alienations thereof during a second or subsequent marriage.

This case was followed by many cases affirming the same doctrine, one of which is *Sebrell* v. *Hughes*, 72 Ind. 186. That was a case where the widow holding real estate by virtue of the previous marriage had

married a second time, and with her second husband attempted to convey such real estate. It was there said that: "It is doubtless true, that the deed of Nancy J. Francis and her husband to Hughes conveyed no title. Said Nancy had a good title and estate in fee-simple, but by reason of section 18 of the law of descent, 1 R. S. 1876, p. 411, she was, during coverture of her second marriage, forbidden to convey. This disability, being for her own benefit, as well as that of her own children by her first husband, her deed constituted no estoppel against her, and if she had chosen to reassert her title and reclaim the possession at any time, she could have done so." Citing several cases, among which is *Vinnedge* v. *Shaffer, supra.* To the same effect as to an attempt to convey by deed are *Knight* v. *McDonald,* 37 Ind. 463; *Griner* v. *Butler,* 61 Ind. 362; *Edmonson* v. *Corn,* 62 Ind. 17; *Avery* v. *Akins,* 74 Ind. 283; *Insurance Co.* v. *Athon,* 78 Ind. 10 ; *Mattox* v. *Hightshue,* 39 Ind. 95 ; *Marsh* v. *Thompson,* 102 Ind. 272.

Other cases of mortgages by the widow and her subsequent husband of real estate held by her in virtue of her previous marriage have followed *Vinnedge* v. *Shaffer, supra,* holding such mortgages void, namely: *Bowers, Admr.,* v. *Van Winkle,* 41 Ind. 432; *McCullough* v. *Davis,* 108 Ind. 292; *Aetna, etc., Ins. Co.* v. *Buck,* 108 Ind. 174.

It has also been held that such real estate so held by such widow who has married a second or subsequent time cannot be sold on execution against her during such subsequent marriage, by reason of the restraint upon alienation, imposed by said section of the statute, in *Schlemmer* v. *Rossler,* 59 Ind. 326; *Miller* v. *Noble,* 86 Ind. 527, and *Smith* v. *Beard,* 73 Ind. 159.

All these cases, it is argued, inferentially hold that such widow, during such subsequent marriage, cannot

alienate a life estate in such lands by a lease or otherwise. Because it is claimed that the mortgages, voluntary deeds and sheriff's sales involved in those cases might have been upheld to the extent of conveying a life estate if the statute does not restrain the alienation of a life estate. But none of the cases referred to assign any reason for the holding but the first two, and they assign the reason that one of the objects of the restraint upon alienation was to protect the woman from improvident and injudicious alienations during a second or subsequent marriage.

As to the power of a court to declare a deed purporting to convey a fee-simple title, by one holding the title in fee-simple, to be only a conveyance of a life estate, is neither mentioned nor discussed; nor is a word said as to whether a sale of a life estate only, on execution of land, against one holding the title in fee-simple, can be made, or whether a mortgage purporting to mortgage the fee, by one holding the fee, can be converted into a mortgage of a life estate so as to avoid the effect of the prohibition against alienating the fee, is not alluded to in any of those cases. A deed or mortgage purporting to convey or mortgage the fee, by one holding only a life estate, might be sufficient to convey or mortgage the life estate, that being all the interest the mortgagor or grantor had in the real estate. But whether his mortgage, deed or sale against him on execution purporting to mortgage, convey or sell the fee, he being the owner of the title in fee-simple, can be converted into a mortgage, conveyance or sheriff's sale of a life estate only so as to avoid a statutory prohibition against alienations, presents a different question.

Such was the nature of all the mortgages, deeds and sheriff's sales involved in the cases above referred to. The land here involved descended to the appellee from

her former husband, and the title in fee-simple vested in her by virtue of the section of the statute of descents preceding the one already referred to, being the old seventeenth section. Burns' R. S. 1894, section 2640 (R. S. 1881, 2483); *Schlemmer* v. *Rossler, supra; Philpot* v. *Webb,* 20 Ind. 509; *Jackson* v. *Finch,* 27 Ind. 316. And her second or subsequent marriage did not divest her title. *Small* v. *Roberts,* 51 Ind. 281; *Philpot* v. *Webb, supra.*

In the case of *Jackson* v. *Finch, supra,* it was sought to recover back money paid on an executory contract made by a widow and her subsequent husband for the conveyance of land held by her in virtue of her previous marriage. The defendants tendered to the plaintiff a quit-claim deed, which he refused to accept. It was there said: "It is contended that a less estate may be alienated by her, and that the quit-claim deed passed that estate. According to appellee's own evidence, she contracted to sell her interest in the land of her late husband. This she could not do. Her offer to convey a less interest than she contracted to convey, was not a compliance with her contract."

The cases above referred to as holding that a widow, during a subsequent marriage, cannot mortgage or convey land held by her in virtue of a previous marriage, and that such land cannot be sold on execution against her during such subsequent marriage, are not necessarily inconsistent with the power to lease the same by her for life, unless it be those of said cases which hold, that the restraint on, or suspension of, her power of alienation is to protect her against improvident and injudicious alienations during the subsequent marriage, as well as to preserve the property for the children in case of her death during the subsequent marriage.

The section of the statute has been materially modi-

fied by amendment since all of those decisions were made except one, namely, *The Aetna, etc., Ins. Co.* v. *Buck, supra.* But that case does not proceed upon the ground that the restraint on, or suspension of, the power of alienation was for the benefit of the woman. It was simply an attempt to mortgage the fee during the subsequent marriage by a widow of lands held by her in virtue of her previous marriage. As before observed, the decision in that case is not necessarily inconsistent with the power to lease such land during her life, even though the section of the statute imposing the restraint had been so changed before that decision as to take away one of the objects of the original section, namely, the protection of the woman against improvident and injudicious alienations.

In 1879 the section was so amended as to read as follows: "If a widow shall marry a second or subsequent time, holding real estate in virtue of any previous marriage, and there be a child or children, or their descendants alive by such marriage, such widow may not, during such second or subsequent marriage, with or without the assent of her husband, alienate such real estate; and if during such marriage such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be: *Provided, however,* That such widow and her living husband may alienate such real estate, if her children by the marriage in virtue of which such real estate came to her shall be of the age of twenty-one years and join in such conveyance: *And provided, further,* That in case there be no child or children or their descendants, by the marriage in virtue of which such real estate came to such widow, then, in such case, such widow may, during such second or subsequent marriage, by her second or subsequent

husband joining in the conveyance thereof, alienate such real estate in fee-simple."

It is, we think, very clear if the original section had for one of its objects the protection of women against improvident and injudicious alienations during her subsequent marriage, that object has been entirely taken away by the amendment; and that the amendment leaves but one object to be accomplished by the suspension of, or restraint on alienation during the second or subsequent marriage, and that is, to preserve the fee-simple for the children of the marriage in virtue of which she received it, in case she dies during such second or subsequent marriage; *Marsh* v. *Thompson, supra.* Because the restraint on, or suspension of the power of alienation ceases if the second or subsequent marriage ceases for any cause during her life; *Piper* v. *May,* 51 Ind. 283. And if she had children by the second or subsequent marriage and dies unmarried, leaving children by both marriages, the land received in virtue of the first marriage will descend to all her children alike; *Teter* v. *Clayton,* 71 Ind. 237.

The single object of the section, as above indicated, can be fully accomplished by restraining or suspending the power of alienation of the fee during the second or subsequent marriage. To accomplish that object it is wholly unnecessary to interfere with the power to lease for a term of years or for the life of the owner.

But let us see what it is that the statute prohibits the alienation of during the second or subsequent marriage. It is real estate held by such widow in virtue of any previous marriage. How does she hold it? The section in question does not provide. But the preceding section, being the old seventeenth section, provides that: "If a husband die testate or intestate,

leaving a widow, one-third of his real estate shall descend to her in fee-simple." 2640 (2483), *supra.* The estate, therefore, which such widow holds in virtue of her previous marriage, as referred to in the amended eighteenth section, quoted above, is an estate in fee-simple. And that is the estate which the section has reference to in the provision that "such widow may not, during such second or subsequent marriage, with or without the assent of the husband, alienate such real estate," and in the last proviso, providing in case there be no child or children or their descendants of the marriage, in virtue of which such real estate came to her, that such widow may, during such subsequent marriage, by such husband joining in the conveyance thereof, "alienate such real estate in fee-simple." This view is strongly supported by some of the earlier cases in this court, construing the section even before its amendment.

In *Blackleach et ux.* v. *Harvey,* 14 Ind. 564, it was said, at pp. 565-6, that: "It has already been intimated in a former opinion, that the object of that section, and others, of the law of descents, was to preserve and transmit the estate to the children of the prior marriage. *Ogle* v. *Stoops,* 11 Ind. 380, and cases cited. It could not be to protect the widow, or wife, from encroachment on the part of her husband; for the law allows first wives to convey their property with the consent of their husbands, *Reese* v. *Cochran,* 10 Ind. 195; and, beyond doubt, first wives need as much protection from the influence of their husbands as do second.

"This being so, it would seem that section 18 above quoted, should only be applied in restraint of the right of the wife to convey, in fee-simple, her real estate, while she had children living by a former husband who might inherit it.   *   *   *   *   The statute

of *Gloucester* prohibited the alienation, by the widow, of the estate assigned to her as dower; but it was held that an alienation for life simply, being no more than her interest, as it worked no wrong to her heirs, was not within the statute.   See Book 2, Blacks. Comm., Shars. Ed., p. 137, and note 26."

And in *Jackson* v. *Finch*, 27 Ind. 316, in speaking of the two statutes of descents mentioned, it was said: "But in the statute under consideration, there was a new estate created for the first time in the widow— that of an estate in fee in a specified portion of the lands of the husband.   The eighteenth section is a provision in relation to the manner in which this new estate was to be held, so far as her power of alienation was concerned.   There was no existing evil to be remedied.   There is nothing to guide us as to the intention of the legislature but the plain and obvious meaning of the words of the statute.   Indeed, the language is so plain that it does not admit of interpretation: 'such widow may not, during such marriage with or without the assent of her husband, alienate such real estate.'   Her estate is a fee.   That estate, by the express words of the statute, cannot be alienated during her second or subsequent marriage."

But that she might dispose of an estate less than the fee-simple, provided such disposition does not interfere with or defeat the object of the statute, in preserving the estate in fee for the children of the previous marriage, in case of her death during such second or subsequent marriage, if not contemplated by the section quoted, seems unavoidably required by a subsequent statute.   That statute was enacted in 1881, and section 2 thereof reads thus:   "A married woman may take, acquire and hold property, real or personal, by conveyance, gift, devise or descent, or by purchase with her separate means or money; and the same, to-

gether with all the rents, issues, income and profits thereof, shall be and remain her own separate property, and under her own control, the same as if she were unmarried. And she may, in her own name, as if she were unmarried, at any time during coverture, sell, barter, exchange and convey her personal property; and she may also, in like manner, make any contracts with reference to the same; but she shall not enter into any executory contract to sell or convey or mortgage her real estate, nor shall she convey or mortgage the same, unless her husband join in such contract, conveyance or mortgage: *Provided, however,* That she shall be bound by an estoppel *in pais* like any other person." Burns' R. S. 1894, section 6962 (R. S. 1881, 5117).

We have seen that she is the owner of the land in fee-simple, with the power of alienation thereof suspended during the second or subsequent marriage. That is the only qualification to her absolute ownership, and that only subsists during the subsequent marriage. The statute last quoted therefore makes all the rents, issues, income and profits thereof her separate property, and places the same under her control, the same as if she were unmarried. She cannot have and control the rents, unless she can rent the land. Indeed, she cannot derive any benefit from her farm unless she can rent or lease it for a given time. We judicially know that she cannot rent a farm for a less term than one year, because it takes that' length of time practically for the lessee to derive any benefit from such lease or renting. Therefore, all must concede that she is at least impliedly authorized to rent or lease it at least one year. And if one year, then the same principle would authorize her to rent for a term of years. If, however, she should die during the marriage and before the expiration of the term, leaving a

child or children or descendants by the marriage in virtue of which the real estate came to her, the lease would expire by operation of law before the expiration of the term by the land descending to her children. Thus it seems that such leases, whether for a long or a short term, would be valid, during her life at least.

Then, if a lease, which by its own provisions is to be for the term of her life, is not valid, why should a lease for a year or a term of years be valid for that portion of the term during which she lives? For that may be a lease beyond her life.

All must admit that, under the statute quoted, a lease for a year or a term of years is valid, at least for so much of the term as she lives. And if that is so, a lease which by its own terms is limited to the term of her natural life is less objectionable and less liable to conflict with the statute than a lease for a year or a term of years. Indeed, a lease for her life cannot come in conflict with the statute or defeat its object, to preserve the estate for the children, while a lease for a year or a term of years might, if enforced according to its terms. We therefore conclude that the lease in this case was valid, and that the court below erred in overruling the demurrer to the complaint seeking to avoid it.

The judgment is reversed, with instructions to sustain the demurrer to the complaint.