## Kemery *v.* Zeigler.

[No. 21,908.   Filed January 4, 1912.]

1. DESCENT AND DISTRIBUTION.—*Widow.—Subsequent Marriage.— Deeds.—Validity.—Sales on Execution.*—Under section eighteen of the act "regulating descents" (1 R. S. 1852 p. 248), providing that the widow of a husband dying intestate, who shall marry a second or subsequent time, may not alienate the real property descending from such decedent during such marriage, a deed, or mortgage, of such real estate during such second marriage is void, and a sale thereof on an execution against such widow conveys no title; and if she should convey such land in violation of such statute she may recover possession thereof and quiet her title thereto.   p. 663.

2. DESCENT AND DISTRIBUTION.— *Remarrying Widow.— Deeds.*— Under §3015 Burns 1908, §2848 R. S. 1881, providing, among other things, that a remarrying widow may not, while children of her former marriage, or their descendants, are living, convey real estate descending to her from such marriage, a deed made by a widow having living children by virtue of the marriage from which the real estate to be conveyed descended to her is void. p. 664.

3. ESTOPPEL.— *Deeds.— Warranty.— Remarrying Widows.*—A remarrying widow is not estopped by the covenants contained in a warranty deed executed by her in violation of §3015 Burns 1908, §2848 R. S. 1881, providing that a remarrying widow may not, during such marriage, convey real estate descending to her by virtue of a former marriage, while children of such marriage, or their descendants, are alive.   p. 667.

4. DEEDS.—*Procuring Execution of, by Fraud.—False Representations.*—Where defendant's agent procured the plaintiff to execute

a quitclaim deed to real estate by falsely representing to her that such deed was merely a release of her claim for damages against defendant, such deed is invalid as between such parties, though the plaintiff was able to read such deed, but did not. p. 669.

5. CONTRACTS.—*Fraud.*—Where one person designedly misrepresents the facts and thereby causes another, relying thereon, to execute an injurious contract, it will be set aside for such fraud. p. 672.

From Dekalb Circuit Court; *Emmet A. Bratton,* Judge.

Suit by Myrtilla Kemery against Eunice Zeigler. From a judgment for defendant, plaintiff appeals. Transferred from Appellate Court under §1405 Burns 1908, Acts 1901 p. 590. *Reversed.*

*P. V. Hoffman, D. D. Moody* and *Charles E. Emanuel,* for appellant.

*J. H. Rose,* for appellee.

MONKS, J.—Appellant brought this suit against appellee to quiet title to the real estate described in the complaint, and to recover possession thereof. Appellee's demurrer to the complaint for want of facts was sustained, and when appellant refused to plead further, judgment was rendered against her.

The only error assigned calls in question the action of the court in sustaining said demurrer.

The facts alleged in the complaint are substantially as follows: Appellant was the widow of Henry Probst, deceased, he being her first husband. At his death he left as his heirs the appellant and three children by said marriage. On January 10, 1890, there was set off to appellant in partition proceedings in the Dekalb Circuit Court, in which appellant and said children were parties, the lands described in the complaint as the one-third interest of said widow in said lands, her husband having died intestate. After said lands were so set off, and while appellant, as the widow of said decedent, was holding said land under and by virtue of said first marriage, she married George N. Knepper; and during

the existence of such marriage, and while the children of said former marriage were still living, she and her husband sold and conveyed said land by warranty deed to appellee, who entered into possession under such deed. Afterward appellant was divorced from said husband. The children by her former marriage were all living. After said divorce in the fall of 1898, appellant had some outstanding corn and other crops on some land in the neighborhood of said land so conveyed. Appellee's cattle and hogs got onto said land, ate and destroyed said crops, and appellant made a claim upon appellee for damages caused thereby. Thereupon a brother of appellee, a lawyer and shrewd business man, came to appellant, professing to act for appellee, and proposed to appellant that he would, for and on behalf of appellee, pay said claim for damages, if appellant would go to Phillip Noel, who lived in the neighborhood, and who was a justice of the peace, and sign and acknowledge a receipt for said money so paid to settle said damages, the amount agreed upon being $15. Appellant did accompany said agent to the home of said justice, and there signed a paper which said agent of appellee took out of his pocket already prepared, and which he informed her was such receipt for said money. Appellant signed and acknowledged such paper without reading it, believing it to be the receipt which said agent informed her it was, and neither said agent nor said justice read such paper to her. She was ignorant and inexperienced in business, and did not know what was necessary in executing said receipt and supposed appellee's said agent acted in all things according to the purport and tenor of the business he and she were transacting, he saying or doing nothing to lead appellant to suspect that he and she were doing anything else than settling the claim for damages for said crops so destroyed, and the amount of damages for said crops so destroyed not being any more than that caused by said stock. At that time appellant was ignorant of the fact that said first deed given by her and her husband was

void, and did not convey any title to said land; and she did not know or suspect that she had any right to, or title in, said land; and she did not know that when she was unmarried it was necessary to get another deed to make said title good in appellee. Prior to executing said second deed, appellant married James Kemery, from whom she has since been divorced. One of the children of said Henry Probst and appellant is still living. Before the commencement of this suit, appellant's attorney made a written demand on appellee for possession of the premises described in the complaint, when appellee brought to said attorney a quitclaim deed executed by appellant in the name of Myrtilla Knepper, bearing date of September 20, 1898, acknowledged before said Justice Noel, which is the date of said transaction relating to settling the damages for said crops. Appellee never put said deed on record until after she exhibited it to plaintiff's attorney on said demand. Said deed purports on its face to be executed to confirm and establish the title to said lands in the defendant by reason of the illegality of said first deed, and purports to have been executed in consideration of $1, though no consideration was actually paid therefor.

Under §18 of the act "regulating descents" (1 R. S. 1852 p. 248, 1 G. & H. p. 294, 1 R. S. 1876 p. 411), which reads, "if a widow shall marry a second or any subsequent time holding real estate in virtue of any previous marriage such widow may not, during such marriage, with or without the assent of her husband, alienate such real estate, and if, during such marriage, such widow shall die, such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be," it was uniformly held that when a widow remarried she was prevented by said section from conveying or mortgaging lands received by her by virtue of a previous marriage so long as such subsequent marriage continued, and that any deed or mortgage made during the existence of

such subsequent marriage was void. *Vinnege* v. *Shaffer* (1871), 35 Ind. 341; *Knight* v. *McDonald* (1871), 37 Ind. 463; *Mattox* v. *Hightshue* (1872), 39 Ind. 95; *Jackson* v. *Finch* (1866), 27 Ind. 316; *Bowers* v. *Van Winkle* (1872), 41 Ind. 432; *Edmonson* v. *Corn* (1878), 62 Ind. 17; *Avery* v. *Akins* (1881), 74 Ind. 283; *Connecticut Mut. Life Ins. Co.* v. *Athon* (1881), 78 Ind. 10; *Sebrell* v. *Hughes* (1880), 72 Ind. 186; *Horlacher* v. *Brafford* (1895), 141 Ind. 528; *Forgy* v. *Davenport* (1896), 146 Ind. 399, 401-403.

It was also held that real estate so held by a widow who has married a second or subsequent time cannot be sold on execution against her during such subsequent marriage by reason of the restraint upon alienation imposed by said section of the statute. *Schlemmer* v. *Rossler* (1877), 59 Ind. 326; *Smith* v. *Beard* (1880), 73 Ind. 159; *Haskett* v. *Hazel* (1882), 83 Ind. 534; *Forgy* v. *Davenport, supra.*

It has also been held by this court, that if a conveyance is made contrary to the provisions of said section, the widow may recover possession of, and have her title quieted to, the lands so conveyed. *Knight* v. *McDonald, supra; Connecticut Mut. Life Ins. Co.* v. *Athon, supra; Sebrell* v. *Hughes, supra,* and cases cited.

However, said §18 was amended in 1879 (Acts 1879 [s. s.] p. 123, §3015 Burns 1908, §2848 R. S. 1881), and appellee claims that under said section, as amended, the warranty deed made by appellant and her second husband conveyed said real estate during her life, and that only the children by the first husband can assert any title to said land, and that they can do so only after her death. Said §3015 reads as follows: "If a widow shall marry a second or any subsequent time, holding real estate in virtue of any previous marriage, and there be a child or children or their descendants alive by such marriage, such widow may not, during such second or subsequent marriage, with or without the assent of her husband, alienate such real estate; and if, during such marriage, such widow shall die,

such real estate shall go to her children by the marriage in virtue of which such real estate came to her, if any there be: provided, however, that such widow and her living husband may alienate such real estate, if her children by the marriage in virtue of which such real estate came to her shall all be of the age of twenty-one years and join in such conveyance: and provided, further, that in case there be no child or children or their descendants by the marriage in virtue of which such real estate came to such widow, then, in such case, such widow may, during such second or subsequent marriage, by her second or subsequent husband joining in the conveyance thereof, alienate such real estate in fee simple.''

It will be observed that under the section as amended, a widow holding real estate, in virtue of any previous marriage, is only prohibited from alienating it during any second or subsequent marriage in case there be living children or their descendants by the marriage in virtue of which the widow holds such real estate, and that such widow and her living husband may alienate such real estate even in such case, if her children by the marriage, in virtue of which such real estate came to her, shall be of the age of twenty-one years and join in such conveyance.

The prohibition of the conveyance of such real estate in case there be a child or children or their descendants alive by such marriage in virtue of which the widow holds such real estate during a second or subsequent marriage is the same under said §18 as amended as it was under §18 before its amendment.

It was said by this court in the case of *Maynard* v. *Waidlich* (1901), 156 Ind. 562, 569, 570: ''It is settled law that a woman during a subsequent marriage is prevented by §2641 Burns 1894 [§3015 Burns 1908], §2484 R. S. 1881, and Horner 1897, from conveying by deed or mortgage the real estate received and held by her by virtue of her previous marriage, so long as there are children by such mar-

riage, or their descendants alive.'' Citing the following cases: *Avery* v. *Akins, supra,* and cases cited; *Edmonson* v. *Corn, supra; Aetna Life Ins. Co.* v. *Buck* (1886), 108 Ind. 174, and cases cited; *United States Sav., etc., Co.* v. *Harris* (1895), 142 Ind. 226, 239, and cases cited; *Horlacher* v. *Brafford, supra; Mickels* v. *Ellsesser* (1898), 149 Ind. 415; *Forgy* v. *Davenport, supra.*

It has been held under §3015, *supra,* that a deed or mortgage executed by a married woman during a second or subsequent coverture, her husband joining therein, upon land held by her in virtue of a previous marriage, there being living children by the marriage in virtue of which she held such real estate, is void. *Aetna Life Ins. Co.* v. *Buck, supra; McCullough* v. *Davis* (1886), 108 Ind. 292; *Haskelt* v. *Hazel* (1882), 83 Ind. 534; *Pence* v. *Long* (1906), 38 Ind. App. 63; *Polley* v. *Pogue* (1906), 38 Ind. App. 678.

It was also held by this court in the case of *Wright* v. *Wright* (1884), 97 Ind. 444, that said §18 prevents the sale on execution against a married woman during her second marriage of lands held by her in virtue of a previous marriage, if children by such marriage are living.

In the case of *Forgy* v. *Davenport, supra,* the court held that said §18 did not preclude the widow during her second marriage from leasing for the period of her natural life real estate held by her in virtue of a previous marriage, where there were living children by such marriage. It was said, however, in that case, that this holding was not inconsistent with the holding in previous cases under such section, that any attempt to mortgage or deed the fee simple of such real estate during a second or subsequent marriage was void. This is true because such deed or mortgage if void was ineffectual for any purpose.

The case of *Forgy* v. *Davenport, supra,* must be limited to the question presented by the record and decided therein, and not extended to all the illustrations made argumenta-

tively as applicable to contentions of counsel.  *McCullough* v. *Davis, supra.*

3.   It is next contended by appellee that appellant is estopped by the covenants of warranty in the deed of herself and her second husband from asserting any title to said land.

It was held by this court in the cases of *Mattox* v. *Hight-shue* (1872), 39 Ind. 95, 103, 104, and *Sebrell* v. *Hughes, supra,* that the widow was not estopped by the covenants in such a deed.  Appellee contends, however, "that said cases were decided as to deeds executed prior to the taking effect of the act of 1879 (Acts 1879 p. 160) section five of which act as amended in 1881 (Acts 1881 [s. s.] p. 527, §3, §7854 Burns 1908) provided that a 'married woman shall be bound by her covenants of title in conveyances of her separate property, as if *sole'*; that by §2 of the act of 1881 (Acts 1881 [s. s.] p. 527, §7853 Burns 1908) a married woman is bound by an estoppel *in pais;* that before the taking effect of said act, a married woman was not liable on her covenants of warranty (1 R. S. 1852 p. 233, §6), and that such was the common-law rule."  The rule is however that to work an estoppel the deed or mortgage must be a valid instrument.  The covenants can have no greater validity than the instrument itself.  No estoppel is created by an invalid instrument nor by one made in contravention of a statute.  Bigelow, Estoppel (4th ed.) 338-340; Bigelow, Estoppel (5th ed.) 349-351; 11 Am. and Eng. Ency. Law (2d ed.) 393; 16 Cyc. 706, 707; note to *Trimble* v. *State* (1896), 57 Am. St. 163, 180; *Doe d. Stevens* v. *Hays* (1848), 1 Ind. 247, 48 Am. Dec. 359; *State, ex rel.,* v. *State Bank* (1854), 5 Ind. 353; *Johnson* v. *Jouchert* (1890), 124 Ind. 105, 110, 111; *Connor* v. *McMurray* (1861), 2 Allen (Mass.) 202; *Barton* v. *Drake* (1875), 21 Minn. 299, 304, 305; *Alt* v. *Banholzer* (1888), 39 Minn. 511, 512, 40 N. W. 830, 12 Am. St. 681; *Smith* v. *Ingram* (1902), 130 N. C. 100,

106, 107, 40 S. E. 984, 986, 61 L. R. A. 878, 881, 882, and cases cited; *Collins* v. *Benbury* (1842), 25 N. C. 277, 285, 38 Am. Dec. 722, 726; *Altemus* v. *Nickell* (1903), 115 Ky. 506, 74 S. W. 221, 103 Am. St. 333; *Kercheval* v. *Triplett's Heirs* (1819), 1 A. K. Marsh. (Ky.) 493, 495, 496; *Central Land Co.* v. *Laidley* (1889), 32 W. Va. 134, 9 S. E. 61, 25 Am. St. 797, 801-803, 3 L. R. A. 826; *Breen* v. *Morehead* (1910), 126 S. W. (Tex. Civ. App.) 650, 655; *Dougal* v. *Fryer* (1831), 3 Mo. 40, 22 Am. Dec. 458, 461; *Sturgeon* v. *Hampton* (1885), 88 Mo. 203; *Winsted Sav. Bank, etc.,* v. *Spencer* (1857), 26 Conn. 195; *Wallace's Lessee* v. *Miner* (1834), 6 Ohio 367; *Merriam* v. *Boston, etc., R. Co.* (1875), 117 Mass. 241; *Burroughs* v. *Pacific Guano Co.* (1886), 81 Ala. 255, 259, 1 South. 212; *Brick* v. *Campbell* (1890), 122 N. Y. 337, 25 N. E. 493, 10 L. R. A. 259; *Langan & Noble* v. *Sankey* (1880), 55 Iowa 52, 54, 7 N. W. 393; *Chapiewski* v. *Campbell* (1899), 29 Ont. 343; *Canada, etc., R. Co.* v. *Town of Niagara Falls* (1893), 22 Ont. 41, 53, 54; *Doe d. Chandler* v. *Ford* (1835), 3 Ad. & El. 649, 30 Eng. Com. Law 301; *Fairtitle d. Mytton* v. *Gilbert* (1787), 2 T. R. 169; *Harkness* v. *Underhill* (1861), 66 U. S. 316, 17 L. Ed. 208. Nor is estoppel created by any act or contract that is illegal and void. *Caffrey* v. *Dudgeon* (1872), 38 Ind. 512, 520, 521, 10 Am. Rep. 126; *Pettis* v. *Johnson* (1877), 56 Ind. 139, 151; *Mattox* v. *Hightshue* (1872), 39 Ind. 95, 104; 2 Herman, Estoppel §793.

It is said in 11 Am. and Eng. Ency. Law (2d ed.) 393: "No question of estoppel by deed can arise where the instrument is absolutely void. And when the deed is invalid, the mere fact that it contains covenants of warranty will not make it operate by way of estoppel. * * * A deed void as given in contravention of a statute works no estoppel."

It was said by this court in the case of *Mattox* v. *Hightshue, supra,* on page 104: "A party can never be estopped by an act that is illegal and void. * * * An equity cannot grow out of an illegal and void transaction."

In the case of *Gordon* v. *City of San Diego* (1894), 101 Cal. 522, 526, 36 Pac. 18, 40 Am. St. 73, 75, the court said: "It is essential to an estoppel by deed that the deed itself should be a valid instrument; and, if void, though under seal, it does not work an estoppel at law or in equity." See, also, Bigelow, Estoppel (4th ed.) 338; Bigelow, Estoppel (5th ed.) 349.

Although a married woman, under §7854, *supra,* is "bound by her covenants of title in conveyances of her separate property, as if *sole,*" in cases where she has the capacity to convey it, and under §7853, *supra,* is "bound by an estoppel *in pais,* like any other person," appellant's want of capacity to convey the land in controversy by the warranty deed in which her second husband joined, under the authorities cited cannot be supplied by estoppel, because said warranty deed was void and the covenants therein do not estop her. *Parsons* v. *Rolfe* (1891), 66 N. H. 620, 27 Atl. 172.

The next question is in regard to the quitclaim deed, the execution of which by appellant is alleged to have been procured by fraud. It was said by this court in the case 4. of *Keller* v. *Equitable Fire Ins. Co.* (1867), 28 Ind. 170, 173: "The rule that the law favors those who are diligent and careful, rather than the reckless and indifferent, is not to be applied for the protection of those who avail themselves of the ignorance existing in the community to perpetrate fraud upon its members." And in the same case on page 174 this court said, quoting from *Botsford* v. *McLean* (1866), 45 Barb. 478: "In that case, it was said: 'If one party is trusted to reduce a contract to writing, he is bound to do it truly, and any variation from it, either by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party, and distinctly assented to by him, is a clear fraud.'"

In the case of *C. Aultman & Co.* v. *Olson* (1886), 34 Minn. 450, 26 N. W. 451, it was claimed that the note sued on was

by the fraud of the payee's agent, procured to be executed
in terms materially different from those agreed to by the
maker.   The court said on page 453: "There is certainly
evidence reasonably tending to support the verdict, by show-
ing that defendant was induced to execute the notes by the
fraudulent representations of plaintiff's agent as to their
contents.   Whether, in trusting to these representations of
the agent, defendant was negligent, does not appear to be
important.   The notes are still in the hands of the original
payee, and it would hardly lie in its mouth to say that the
defendant was not in law defrauded because he was careless
in trusting to its representations.   *Cole Bros. & Hart* v.
*Williams* [1882], 12 Neb. 440, 11 N. W. 875; *Mackey* v. *Pe-
terson* [1882], 29 Minn. 298, 13 N. W. 132, 43 Am. Rep.
211; * * * *Foster* v. *Mackinnon* [1869], L. R. 4 C. P.
704."

In the case of *Maxfield* v. *Schwartz* (1890), 45 Minn. 150,
151, 152, 47 N. W. 448, 10 L. R. A. 606, 607, the court said:
"If Berens & Nachtsheim were seeking to enforce the writ-
ten contract, a plea of fraud such as is here presented would
constitute a defense, even though the defendants may have
been wanting in ordinary prudence in relying upon the rep-
resentations of the other contracting party as to the tenor or
contents of the writing.   They might still rely upon the de-
fense that this was not their contract.   *Aultman* v. *Olson*
[1886], 34 Minn. 450, 26 N. W. 451; *Frohreich* v. *Gammon*
[1881], 28 Minn. 476, 11 N. W. 88; *Miller* v. *Sawbridge*
[1882], 29 Minn. 442, 13 N. W. 671; *Albany City Sav. Inst.*
v. *Burdick* [1881], 87 N. Y. 40; *Linington* v. *Strong* [1883],
107 Ill. 295; *Gardner* v. *Trenary* [1885], 65 Iowa 646, 22 N.
W. 912; *Thoroughgood's Case* [1584], 1 Coke 9; *Stanley* v.
*M'Gauran* [1882], 11 L. R. Ir. 314; *Redgrave* v. *Hurd*
[1881], 20 Ch. Div. 1, 13; Pollock, Contracts *401 *et seq.*
and cases cited; 1 Bigelow, Fraud 523-525.   While in the
ordinary business transactions of life men are expected to
exercise reasonable prudence, and not to rely upon others,

with whom they deal, to care for and protect their interests, this requirement is not to be carried so far that the law shall ignore or protect positive, intentional fraud successfully practised upon the simple-minded or unwary. As between the original parties, one who has intentionally deceived the other to his prejudice is not to be heard to say, in defense of the charge of fraud, that the innocent party ought not to have trusted him."

In 1 Bigelow, Fraud 525, 526, it is said: "Every man or woman, even though illiterate, is presumed to know the contents of a written instrument signed by him; but no presumption of knowledge will stand in the way of a charge of fraud made in regard to the contents of the writing. No doubt it would be imprudent, in a sense, not to read or to require the reading of an instrument before signing or accepting it; indeed the courts would turn a deaf ear to a man who sought to get rid of a contract solely on the ground that its terms were not what he supposed them to be. But the courts would not refuse to listen, on the contrary they would give relief, where a plaintiff charged fraud upon the defendant in reading the contract to him, or in stating its nature or terms; and also in leaving out terms agreed upon, or in inserting terms not agreed upon. This would obviously be true of cases in which the complaining party could not read, or could read only with difficulty, or in which a printed document was concerned containing much fine print. But the rule is not confined to such cases; on the contrary it is very general." See, also, *Shrimpton & Sons* v. *Philbrick* (1893), 53 Minn. 366, 368, 55 N. W. 551; *Eggleston* v. *Advance Thrasher Co.* (1905), 96 Minn. 241, 246, 247, 104 N. W. 891, and cases cited; *Strand* v. *Griffith* (1899), 97 Fed. 854, 38 C. C. A. 444, 446, 447; *Chamberlain* v. *Fuller* (1886), 59 Vt. 247, 256, 9 Atl. 832; *Burroughs* v. *Pacific Guanc Co.* (1886), 81 Ala. 255, 258, 1 South. 212 and cases cited.

It is clear from the allegations of the complaint that ap-

pellant executed the quitclaim deed under a misapprehension as to its nature and that such misapprehension was caused by the false representations of appellee's agent. From the representations of appellee's agent she supposed and had the right to suppose that she was signing a receipt for the $15 that appellee was to pay her for the damages done in the fall of 1898 to the corn and other crops on her land. Appellee's agent represented that he was authorized to settle appellee's claim for damages to said crops. With a full belief that she was signing such a receipt, and appellee's agent knowing that she so intended, she signed the quitclaim deed.

It has been held in this State that when one person designedly and knowingly causes a false impression or belief to be entertained by another, and the latter is thereby induced to make a contract injurious to his interests, such a contract is so impressed with fraud that the courts will set it aside. *Laidla* v. *Loveless* (1872), 40 Ind. 211, and cases cited; *Ray* v. *Baker* (1905), 165 Ind. 74, 88 and cases cited; 1 Bigelow, Fraud, 523-527, 534.

To say that the facts set out in the complaint in regard to the manner in which the execution of said quitclaim deed was procured did not constitute a cause of action, would sanction bad faith in appellee's agent, and allow her an advantage she is not entitled to. The demurrer admits the truth of the facts alleged, and should have been overruled.

Judgment reversed, with instructions to overrule appellee's demurrer to the complaint, and for further proceedings not inconsistent with this opinion.