GEORGE W. DEISCHER *et al.*

*v.*

FANNIE PRICE *et al.*

*Filed at Mt. Vernon January 16, 1894.*

1. MISTAKE—*correction, when mutual.* On the death of a wife without issue, her brothers and sisters agreed with her husband to convey him a life estate in the land left by the deceased. The husband had a deed prepared which conveyed the fee, and the brothers and sisters executed the same without reading it, under the belief that it passed only a life estate: *Held*, that as the mistake was mutual a court of equity would reform the deed so as to make it conform to the intention of the parties.

2. SAME—*induced by fraud—correction.* If the grantee of land has the deed for the same prepared for execution, and a mistake occurs in making a conveyance of the fee instead of a life estate, and he knew of such mistake, and induced the grantors to execute the deed under a mistake as to its terms without informing them of the fact, his conduct will be such a fraud on the grantors as, coupled with the mistake he has led the grantors into, will authorize a decree reforming the deed.

Appeal from the Circuit Court of Wayne county; the Hon. C. C. Boggs, Judge, presiding.

Messrs. Holt & Hamilton, and Messrs. Funkhouser & Rider, for the appellants:

There is neither bill nor proof in this cause to sustain the decree on the ground of mistake, because, in order that a mistake may come within the cognizance of a court of equity, it must be shown to be, first, material; second, mutual; third, unintentional; and fourth, free from negligence. The three last named requisites were neither alleged nor proven in this case. 15 Am. and Eng. Ency. of Law, 631, 632; *Sutherland* v. *Sutherland,* 69 Ill. 481; *Shay* v. *Pettes,* 35 id. 360; *Buck* v. *Holt,* 74 Iowa, 294; Kerr on Fraud and Mistake, (Bump) 365.

There is neither bill nor proof in this cause to sustain the decree on the ground of fraud, because there was neither deception nor artifice alleged or proven against the defendant to circumvent, cheat or deceive the complainants. Kerr on Fraud and Mistake, 365; 2 Story's Eq. Jur. sec. 793; *Walker* v. *Hough,* 59 Ill. 375.

There is no fraud as for a false and fraudulent representation, where, with reasonable care and prudence, the deception might have been avoided. *Cooke* v. *Jersey County,* 1 Gilm. 537; *Grier* v. *Puterbaugh,* 108 Ill. 602; *Gage* v. *Lewis,* 68 id. 604.

A court of equity will not rectify a mistake in a contract that is voluntary and without consideration. Kerr on Fraud and Mistake, 222; *Preston* v. *Williams,* 81 Ill. 176.

Messrs. Creighton & Kramer, for the appellees:

The bill states that appellant Deischer entered into an agreement with appellees that if they would convey to him the land for his lifetime, the fee should remain in them. By some mistake or fraud the deeds were not so prepared, and appellees, being inexperienced in title papers, did not discover the mistake or fraud until the deed had been delivered. To

correct this mistake or fraud a bill in chancery lies. 15 Am. and Eng. Ency. of Law, 626; *Pool* v. *Docker,* 92 Ill. 501; 92 Mich. 353; *Broadwell* v. *Broadwell,* 1 Gilm. 599; *Douglass* v. *Littler,* 58 Ill. 342; *Insurance Co.* v. *Jaynes,* 87 id. 199.

It has been the uniform holding of our courts, that where the evidence clearly shows that a mutual mistake was made by parties to a contract, a court of equity will reform a written contract to correspond to the real contract made. *Shay* v. *Pettes,* 35 Ill. 360; *Adams* v. *Robertson,* 37 id. 45; *Miner* v. *Hess,* 47 id. 170; *Goltra* v. *Sanasack,* 53 id. 456; *Moore* v. *Munn,* 69 id. 591; *Sapp* v. *Phelps,* 92 id. 588; *Ewing* v. *Coal Co.* 110 id. 290; *Arter* v. *Cairo Democrat Co.* 72 id. 434; *Bent* v. *Coleman,* 89 id. 364; *Schwass* v. *Hershey,* 125 id. 653; *Hunter* v. *Bilyeu,* 30 id. 228; *Cunningham* v. *Wren,* 23 id. 64; *Wear* v. *Parish,* 26 id. 240.

A court of equity will set aside or correct a contract obtained through fraud. *Lockridge* v. *Foster,* 4 Scam. 569; *Mitchell* v. *McDougall,* 62 Ill. 498; *Baker* v. *Rockabrand,* 118 id. 365; *Castle* v. *Kemp,* 124 id. 307.

Mr. JUSTICE BAILEY delivered the opinion of the Court:

This was a bill in equity to reform a deed. The facts are these: On January 12, 1892, Theresa Deischer died intestate, leaving no child or descendant, and leaving her surviving, as her heirs at law, George W. Deischer her husband, Susan E. Madding her mother, and Fannie Price, Anna Bunting, M. E. Doty, J. J. Hunt, C. C. Hunt, Seymour Madding and DeKalb Madding, her brothers and sisters. At the time of her death, she was the owner in fee of certain lands in Wayne county, containing about seventy acres. George W. Deischer, shortly after the death of his wife, induced the mother, brothers and sisters of his wife, with the exception of DeKalb Madding and C. C. Hunt to join in the execution of a deed which purported to convey and quit-claim all their interest in the land to him. This deed recited a consideration of one dollar, but it seems

25—148 ILL.

to be conceded that it was purely voluntary, and that no actual consideration passed.

It is now insisted by the grantors that the real intention of both grantors and grantee, at the time the deed was executed, was merely to convey to the grantee an estate for life, leaving the reversion in the grantors, and that by mutual mistake, the deed was so drafted and executed as to convey the fee. They allege that George W. Deischer, shortly after the death of his wife, requested them to convey to him such life estate, and undertook to have a deed drafted which would effectuate that result, and leave the reversion in them at his death; that he thereupon had a deed prepared and presented to them for execution, and that they, being inexperienced in the conveyance of real estate, and in the terms and provisions of deeds, signed and delivered the deed in question, believing at the time that they were only conveying a life estate in the lands, but after the deed was executed and placed on record, they discovered that they had conveyed the fee; that after discovering the mistake, they requested him to re-convey the lands to them, reserving to himself the life estate, which he refused to do.

The grantors thereupon brought their present bill to cancel or reform the deed, making the grantee a defendant, and as he has married again, his second wife was also joined as a defendant. The answer denies the alleged mistake, and insists that the deed was executed in accordance with the actual intention of the parties. A replication was filed, and the cause being heard on pleadings and proofs, the court found the facts to be as alleged in the bill, and decreed that the deed be so reformed as to convey to George W. Deischer the complainants' interest in the lands in question only for and during his natural life, with a reversion at his death to the complainants, their heirs and assigns. From this decree the defendants have appealed to this court.

The only point made by the appellants is, that the decree is not supported by the evidence. We have examined the

record with care, and while we find the evidence somewhat conflicting, we think it clearly preponderates in favor of the complainants. We shall attempt no statement of the evidence in detail, but need only say, that the larger part of the witnesses who took part in or were present at the negotiations which resulted in the execution of the deed, agree that the only conveyance which Deischer requested them to make, or which they consented to make, was a life estate in such interest in the land as was inherited by the complainants, and that upon his death, their interest was to come back to them; that he undertook to have a deed drawn up which would effectuate such conveyance, and that when the deed was presented to them for their signatures, they signed it without examination, in full confidence that it was of the tenor and legal effect represented to them by Deischer.

None of the parties seem to have had experience in the conveyance of land, or familiarity with the technical terms employed in deeds of conveyance. A scrivener was employed by Deischer to draft the deed in whom both he and the complainants seem to have had confidence. The fair conclusion from all the evidence is, that at the time the deed was executed, Deischer, as well as the complainants, supposed the deed to be so drawn as to effectuate the intention of the parties, and therefore that the mistake was mutual. But if it should be admitted that he, at the time, was aware of the terms and legal effect of the deed, and that the mistake was wholly on the part of the complainants, his position would in no respect be improved. He must in that case have known that the complainants were executing the deed under a mistake, brought about by his own agency, and his conduct would then be a fraud, which coupled with the mistake into which he had led the complainants, would entitle them to a reformation of the deed.

We are of the opinion that the evidence supports the decree, and it will therefore be affirmed. *Decree affirmed.*