## ALLEN ET AL. *v.* BOLLENBACHER.

[No. 7,465. Filed March 7, 1912.]

1. CONTRACTS. — *Reformation.* — *Deeds.* — *"Executed."* — *Cross-Complaint.*—A cross-complaint alleging that cross-complainant "executed" to her mother a warranty deed and that pursuant to a certain contract such deed was to be "delivered" to her mother, is not bad on the ground that if the deed was "executed," such contract could not affect it, the word "executed," as used, importing the signing and acknowledgment only. p 591.

2. WITNESSES.—*Attorneys.—Confidential Communications.*—Where an attorney, in the presence and at the behest of a mother and her daughter, prepared deeds and a contract to be executed by them, he is a competent witness, in a suit to reform such contract, to testify as to the conversation leading up to the execution of such deeds and contract. p. 592.

3. REFORMATION.—*Contracts.—Failure to Express Real Contract.— Mistakes of Law.*—Equity will reform a writing so as to express the real intention of the parties to a contract, though the scrivener tried, but failed, to execute it so that their intentions would be carried out. p. 594.

From Monroe Circuit Court; *James B. Wilson*, Judge.

Cross-complaint by Jennie D. Bollenbacher against Wesley Allen, Sr., and others. From a decree for the cross-complainant, cross-defendants appeal. *Affirmed.*

*Miers & Corr,* for appellants.

*Henley & East,* for appellee.

MYERS, J.—This was a suit to quiet title to, and for the partition of certain real estate in Bloomington, Indiana.

It is conceded that the case was tried on the third and fourth paragraphs of the complaint, the second paragraph of the cross-complaint, and general denials to each of said paragraphs. The issues were tried by the court, and a decree was entered in favor of appellee on her cross-complaint.

In this court appellants have assigned as error (1) the overruling of their demurrer to the second paragraph of cross-complaint, and (2) the overruling of their motion for a new trial.

The second paragraph of cross-complaint was to quiet title in appellee to said real estate, and to reform a certain written contract with reference thereto. The only defect claimed in this paragraph is that it alleges that appellee and her husband "executed and acknowledged a warranty deed to said premises to said Mary Snodgrass."

The facts material to the questions presented, and common to both of these pleadings, in substance, are that on August 10, 1893, appellee Jennie D. Bollenbacher and her husband executed a warranty deed to Mary Snodgrass for certain real estate in Bloomington, Indiana, and on the same day and concurrently therewith the grantor and grantee in said deed and the latter's husband entered into a written contract, the material part of which is as follows:

"This day Mary Snodgrass has executed to Jennie D. Bollenbacher, her daughter, a warranty deed for her house and lot in Bloomington, Indiana, and it is understood that as a part of the consideration therefor William P. Bollenbacher and Jennie D. Bollenbacher, husband and wife, agree to assist in the support of said Mary Snodgrass, as she may need it, during her natural life. Said Jennie D. Bollenbacher and William P. Bollenbacher have this day also executed to Mary Snodgrass a warranty deed for the property described

in the foregoing deed, and delivered it to William H. Paynter, of Salem, Indiana, to be delivered to Mary Snodgrass, above named, at the time of the death of said Jennie D. Bollenbacher, that said William H. Paynter is to hold said deed in trust for said Mary Snodgrass, and deliver the deed as above stated unless the three parties above named shall all agree that said deed shall be destroyed before that time. This instrument is to be attached to the deed above named, held in trust, and to be delivered as stated by said William H. Paynter, his executor and administrator.''

The deed and contract in question were deposited with said Paynter, and all the parties never agreed to destroy the deed. On August 18, 1905, after the death of Mary Snodgrass, said Paynter delivered the deed and contract to appellee.

It appears from the cross-complaint, by direct allegation, that on August 10, 1893, Mary Snodgrass executed to appellee a general warranty deed for the real estate described in the complaint, and that the deeds from and to Mary Snodgrass, and said contract, were executed at the same time and concurrently with each other; that it was the intention of all the parties thereto to embody in said concurrent agreement the provision that the deed from Jennie D. Bollenbacher and her husband to Mary Snodgrass should be delivered by said Paynter to said Mary Snodgrass only on the condition that said Jennie D. Bollenbacher should depart this life before her mother, Mary Snodgrass; that by mutual mistake of all the parties to the concurrent agreement it was written without that provision, and with the provision that said deed should be delivered to Mary Snodgrass upon the death of Jennie D. Bollenbacher; that said agreement did not then or since that time express the wish or intention of the parties thereto; that said Paynter was a nephew of Mary Snodgrass, and a first cousin of Jennie D. Bollenbacher, and that the preparation of the deeds and agreement was left to said Paynter, and each believed that it was in accordance with and expressed their

wishes; that appellee was not aware of this mistake until about the time this action was commenced on December 20, 1905; that it was the intention and agreement of the parties, in case of the death of the daughter before her mother, that the property mentioned should go back to the mother, and not descend to the husband, William P. Bollenbacher.

Appellants insist that if the deed had been fully executed, the contract could not affect it, and therefore no cause of action is stated. Ordinarily, to speak of a deed or other instrument of like character as "executed", implies not only that it was signed and acknowledged, but delivered. However, as the word is here used, it certainly appears that the pleader did not intend that it should be taken in its technical sense, but as referring only to the signing and acknowledging of the deed, and not to its delivery. Giving the word in question the meaning evidently intended, the objection is not well taken.

Two reasons are assigned for the motion for a new trial: (1) The decision of the court is not sustained by sufficient evidence, and (2) the court erred in permitting William H. Paynter, over appellants' objection, to state what occurred between him and Mary Snodgrass, for the reason that the relation of attorney and client existed.

As to the second reason, it appears from the evidence that the witness Paynter was a practicing attorney, residing at Salem, Indiana, and that Mary Snodgrass and her daughter, Jennie D. Bollenbacher, were his aunt and cousin, respectively, both living in Bloomington, but in separate dwellings; that a short time before the daughter and William P. Bollenbacher had intermarried; that pursuant to his aunt's request, accompanied by his wife and child, he went to her home in Bloomington, where she informed him that she wanted to deed the property in question to her daughter, Jennie D. Bollenbacher, reserving to herself a life estate; that after preparing a deed in accordance with her wishes, the question of the daughter's liability

to furnish the mother a living was considered, which re-
sulted in the immediate preparation of the deed and contract
in suit. They were all then signed, Mary Snodgrass signing
the deed to appellee first. They were then acknowledged
and delivered to the witness, who retained them until after
the death of the mother, when they were returned to the
daughter. The deeds and contract were prepared at the
home of Mary Snodgrass, and in the presence of all the par-
ties to the transaction. Paynter made no charge and re-
ceived no pay for his services. His individual expenses to
and from Bloomington were paid by appellee. A few days
after this transaction appellee and her husband moved into
the home of Mary Snodgrass, where they all lived until the
death of the latter. Immediately prior to the preparation
of the deeds and contract, their object and purpose were
discussed by Paynter and Mary Snodgrass, in the presence
of the daughter, her husband, the wife of the witness and
the notary who took the acknowledgment.

A fair consideration of the evidence, disclosed by the rec-
ord, warrants the conclusion that the witness, William H.
Paynter, as a scrivener, cautioned by his legal learning,
undertook to prepare papers which would vest the daughter
with the title to the real estate, and obligate her to furnish
the mother a living, and only in case the mother outlived the
daughter should the title to the property be revested in the
mother. Such was the agreement and intention of the par-
ties, but the procedure through which this agreement was
to be made effective was left to the witness. Over appel-
lants' objection, the witness was allowed to state what was
said and done at the time the deeds and contract were
prepared.

By §520 Burns 1908, §497 R. S. 1881, attorneys are not
competent witnesses "as to confidential communications
made to them in the course of their professional business,
and as to advice given in such cases." But it has been held

that communications made to an attorney who is acting for both parties, and in the presence of each other, or while acting merely as a scrivener, will not be regarded as confidential. *Hanlon* v. *Doherty* (1887), 109 Ind. 37; *McDonald* v. *McDonald* (1895), 142 Ind. 55, 78; *Thomas* v. *Griffin* (1891), 1 Ind. App. 457; *Borum* v. *Fouts* (1860), 15 Ind. 50.

The facts in this case bring it within the rule as settled by the cases cited, and the objection to Paynter's testimony was properly overruled.

The first reason assigned by appellants in support of their motion cannot be sustained. The weakness of their contention lies in the assumption that the written instrument accompanying the deed expresses the agreement of the parties, which is sought to be reformed because of a mistake as to its legal effect. But as we see this case, it is one where the scrivener, through mistake or inadvertence, failed to reduce the actual agreement of the parties to writing. In such cases "equity will interfere with the appropriate relief, either by way of defense to its enforcement, or by cancelation, or by reformation, to the same extent as if the failure of the writing to express the real contract was caused by mistake of fact." 2 Pomeroy, Eq. Jurisp. §845. See, also, 2 Beach, Eq. Jurisp. §544; *Parish* v. *Camplin* (1894), 139 Ind. 1; *Sparta School Tp.* v. *Mendell* (1894), 138 Ind. 188; *Johnson* v. *Sherwood* (1905), 34 Ind. App. 490; *Nichols & Shephard Co.* v. *Berning* (1906), 37 Ind. App. 109.

In the case of *Adams* v. *Wheeler* (1890), 122 Ind. 251, it is said: "It is a well-established principle of equity jurisprudence, that where through the mutual mistake of the parties, the form of an instrument is such that it does not express the agreement as the parties intended it should, the aid of a court of chancery may be invoked to reform the contract or deed. *Keister* v. *Myers* [1888], 115 Ind. 312;

*Baker* v. *Pyatt* [1886], 108 Ind. 61. Courts of equity would be justly subject to reproach if they could afford no relief in cases like the present.''

Having determined that the testimony of witness Paynter was admissible, there is an abundance of evidence to sustain the decision of the court.

Judgment affirmed.