MCNAIR *v.* PUBLIC SAVINGS INSURANCE COMPANY OF NORTH AMERICA ET AL.

[No. 13,116.   Filed October 25, 1928.   Mandate modified December 14, 1928.]

*Charles Remster, H. H. Hornbrook, Albert P. Smith, Paul Y. Davis, Kurt F. Pantzer* and *Ernest R. Baltzell,* for appellants.

*Bernard Korbly, John G. McNutt* and *Thomas M. Honan,* for appellees.

McMAHAN, J.—This is an action by the Public Savings Insurance Company of America, hereafter designated as "appellee," against Roy L. McNair and Mae F. McNair, his wife, and others to recover judgment on a note for $10,000, and two interest coupon notes of

$350, signed by Roy L. McNair, and to foreclose a mortgage on 590 acres of land in Jackson county.

The complaint alleges the execution of the note and coupons by Roy L. McNair, the execution of the mortgage by the latter and his wife, the sale of the land by McNair to the defendants Edward L. Selvage and Mary M. Selvage, who, as a part of the purchase price, assumed and agreed to pay the notes so secured by the mortgage. The principal note provides that, "if any installment of interest is not paid when due, then, at the *option* of the holders of this note, the said principal sum, with all interest due or accrued thereon, shall become due and payable at once without notice, with ten percent attorney's fees."

The complaint alleges that the defendants, other than those hereinbefore named, had or claimed to have an interest in the real estate in question and that such claims were inferior to the lien of said mortgage; that the defendants had failed to pay the interest coupon notes due June 15, 1924, and December 15, 1924; that, by reason of the non-payment of said notes, and because of the provisions of the principal note and mortgage, the plaintiff exercised its option to and did declare the principal note due; and asked for a personal judgment against Roy L. McNair, Edward L. Selvage and Mary M. Selvage for $14,000 and for a foreclosure of the mortgage as against all of the defendants. The principal note and the two interest coupons are copied and set out in the complaint, while a copy of the mortgage, marked as an exhibit, is by reference made a part of the complaint.

Mrs. McNair filed an answer of denial and of no consideration. She also filed a cross-complaint, in three paragraphs, against the plaintiff and all of her codefendants. The first paragraph alleges that she joined in the execution of the mortgage for the sole purpose of re-

leasing her inchoate interest in the real estate, to enable her husband, who was the owner of the fee, to secure a loan; that she received none of the proceeds of the loan nor any benefit by reason of the execution of the mortgage; that her husband and his interest in the real estate are bound as principals, and that she and her inchoate interest are bound as sureties, and asking that the court order the property of her husband be exhausted before her property be levied upon.

The second paragraph of cross-complaint alleges that she is the wife of Roy McNair, who, in June, 1921, made a written application to appellee for a mortgage loan of $10,000 on certain real estate in Jackson county owned by her husband, said loan to run for five years at ——% interest, and, in such application, her said husband agreed to repay principal and interest at such place as appellee might designate; that this application was signed by Roy L. McNair, a copy of which is filed with and made a part of this paragraph of cross-complaint. It also alleges that appellee accepted such application and agreed to make the loan upon the terms and security mentioned in the application and not otherwise; that there was no agreement between appellee and Roy L. McNair or between appellee and the cross-complainant that such loan should be secured by any other or additional security than mentioned in the application; that purporting to act pursuant to the application, appellee prepared and submitted to Roy McNair for his signature the principal and coupon notes to evidence the indebtedness, and that appellee prepared and submitted to Roy L. McNair and the cross-complainant for their execution such mortgage on the real estate mentioned in the application to secure the indebtedness of Roy McNair to be created by said loan; that, in submitting said mortgage to the cross complainant, appellee represented that it was necessary for her to join therein to release her inchoate

right in said real estate, and for no other purpose, and fraudulently represented that the mortgage was prepared pursuant to the application and agreement; that appellee's only purpose in asking for her signature to the mortgage was to obtain the release of such inchoate right, and that appellee fraudulently concealed from her the fact that the mortgage as prepared by it contained the words "and the mortgagors expressly agree . . . to pay the sum of money above secured without relief from valuation and appraisement laws"; that it had not theretofore been agreed by any of the parties that appellant should in any manner become liable as surety or otherwise for the indebtedness created by said loan; that the appellee had agreed and was obligated to make such loan upon the security mentioned in the application; that appellant signed the mortgage upon appellee's said representation and for the sole purpose of releasing her inchoate right in said land; that she had recently learned appellee was claiming that the words quoted bound appellant to pay the mortgage debt; that if said words bound appellant, said promise was without consideration, was obtained by fraud and is of no binding effect upon her, and asking that the mortgage be reformed so as to limit the operation of her signature thereto as a release of her inchoate right to the real estate covered by the mortgage and for all other proper relief.

The third paragraph, like the second, alleges the facts relating to appellant's husband making a written application to appellee for a mortgage loan of $10,000; that appellee accepted such application upon the terms and security therein mentioned without any agreement that such loan should be secured by any other or different security than mentioned in the application; that said application was made upon a blank furnished by plaintiff, a copy of such application being set out in full; that appellee, purporting to act under said agreement, prepared

the notes mentioned in its complaint; that it also prepared, upon its own printed form, and submitted to Roy L. McNair and appellant for their execution such mortgage to secure the indebtedness of her said husband to appellee, to be created by said loan; that, in submitting said mortgage to appellant for her signature, appellee and appellant both believed it was necessary for her to join therein to release her inchoate interest and that the release of such inchoate interest was the only effect of said mortgage; that, due to the mistake of the parties, and contrary to their understanding and intention, it contained a promise on the part of the mortgagors "to pay the sum of money above secured"; that she signed said mortgage in ignorance of the fact that said mortgage contained such promise; that appellee is now claiming that the words above set forth make her personally liable to pay the mortgage debt; that her first knowledge of said claim on appellee's part was learned on May 2, 1925; that said promise was without consideration and was obtained by the mistake of the parties to said mortgage and asking that the mortgage be reformed so as to limit the operation of her signature thereto to the release of her inchoate interest.

The issues were closed by a reply of denial and by an answer denying the allegations of the second and third paragraphs of cross-complaint. Roy L. McNair appeared by counsel but filed no answer. All other defendants were defaulted. A trial by the court, without jury, resulted in a finding that there was due appellee from appellant, Roy L. McNair, Edward L. Selvage and Mary M. Selvage, on the note and mortgage sued on, $12,896.12 plus $1,246.14 attorney fees, without relief, and that said mortgage should be. foreclosed. There was a finding in favor of appellant on the first paragraph of her cross-complaint that she executed the mortgage as surety for her husband and that the property of her

husband should be first exhausted.   There was a finding against appellant on the second and third paragraphs of her cross-complaint.   Judgment was rendered against appellant and the other three-named defendants for $14,112.26, with a decree of foreclosure against all defendants named in complaint.   Appellant's motion for a new trial, specifying that the decision was not sustained by sufficient evidence and was contrary to law, being overruled, this appeal followed.

The undisputed evidence shows that appellant and her husband resided in Indianapolis; that the husband made a written application to appellee for a mortgage loan of $10,000; that appellant did not join in that application; that the application was definite as to all its terms except that the rate of interest was not stated; that the applicant, Roy L. McNair, promised to pay interest and reserved the right to prepay the loan on definite terms; that he promised to secure the loan by a mortgage on property owned by him and described in the application; that the application contained a detailed statement as to his financial condition; that he also promised to pay in advance a fee to cover the expenses of appellee in investigating the security offered and closing the proposed loan; that appellee inspected the real estate described in the application and notified appellant's husband that the loan was acceptable; that appellant's name was not mentioned in the application except in answer to an inquiry as to whether the applicant was married, and, if so, the name of his wife.   She was never requested by anyone to sign the note or the interest coupons or to become security for the payment of the loan, and she did not sign the note or coupons.   There was no agreement or understanding on the part of anyone that appellant should become security for the payment of the loan nor was anything ever said upon that subject. After the loan was accepted, appellee prepared the note,

the interest coupons and the mortgage. One of the officials of appellee company who acted for appellee in making the loan testified that neither he, nor, to his knowledge, any official or agent of appellee, requested appellant to become personally liable for the loan; that, after the loan was accepted, he instructed a stenographer to prepare the mortgage in accordance with the application which he gave her. The uncontradicted evidence further shows that the mortgage was not drawn up in conformity with the application. The application did not contain any statement or provision that the mortgage should contain a clause wherein the mortgagors agreed to pay the mortgage debt.

Appellee, having prepared the application and mortgage on blank forms of its own, knew or at least was bound to know that the mortgage as drawn did contain such a provision, and being intrusted with preparing the mortgage and knowing that appellant had not seen the mortgage until it was placed before her for her signature, and knowing she did not read the same, was in duty bound to inform her that the provision wherein she agreed to pay the mortgage debt had been inserted before requesting her to sign the mortgage. Appellant testified that she was informed it would be necessary for her to sign the mortgage as the wife of the mortgagor, and that she signed the mortgage as such, in order to release her inchoate interest and not otherwise.

The only possible inference to be drawn from the undisputed evidence is that the insertion of the provision to the effect that the mortgagors should pay the debt was by mistake or by fraud on the part of appellee, and, in either instance, equity will grant relief. Equity will reform a written instrument where there is a mutual mistake, or a mistake on one side and fraud or inequitable conduct on the other. *Simmons*

*Creek Coal Co.* v. *Doran* (1891), 142 U. S. 417, 35 L. Ed. 1063. As was said in *Koons, Gdn.*, v. *Blanton* (1892), 129 Ind. 383, 27 N. E. 334: "It is not alone in cases of mutual mistake that a court of equity will reform a written instrument. That relief will be granted where by the fraud of one of the parties to the instrument the language inserted in it is materially different from that agreed upon." As heretofore stated, the clear understanding between the parties was that appellant was to join with her husband in the mortgage for the purpose of releasing her inchoate interest. Appellee undertook and assumed the duty of preparing the mortgage so as to conform with the application. Appellee did prepare the mortgage and inserted the clause imposing a personal liability upon appellant, and tendered that mortgage to appellant for her signature, knowing the mortgage was not drawn in accordance with the application, and knowing that appellant had not been informed of such fact. The undisputed evidence brings this case within the doctrine that where one party to a contract undertakes to draw up the contract in accordance with a previous understanding, but drafts the contract contrary to that understanding, and permits the other party to sign the same without informing him that the contract is not in conformity with the previous understanding, such conduct on the part of the party preparing the contract is fraudulent.

Mr. Pomeroy, 2 Pomeroy, Eq. Jur. (4th ed.) §902, in speaking on this subject, says: "Concealment becomes fraudulent only when it is the duty of the party having knowledge of the facts to discover them to the other; and this brings back the question, When does such duty rest upon either party to any transaction? All the instances in which the duty exists, and in which a concealment is therefore fraudulent, may be reduced to three distinct classes. These three classes are, in general,

clearly distinct and separate, although their boundaries may sometimes overlap, or a case may fall within two of them. . . . (2) The second class embraces those instances in which there is no existing special fiduciary relation between the parties, and the transaction is not in its essential nature fiduciary, but it appears that either one or each of the parties, in entering into the contract or other transaction expressly reposes a trust and confidence in the other; or else from the circumstances of the case, the nature of their dealings, or their position towards each other, such a trust and confidence in the particular case is necessarily implied. The nature of the transaction is not the test in this class. Each case must depend upon its own circumstances. The trust and confidence, and the consequent duty to disclose, may expressly appear by the very language of the parties, or they may be necessarily implied from their acts and other circumstances."

The rule is stated in 23 R. C. L. 328, as follows: "If one whose duty it is to prepare the instrument according to a previous agreement prepares one materially different from the agreement by changing the terms and delivers it as in accordance with such agreement, he commits a fraud which entitles the deceived party to a reformation. And whether the deviation from the agreement is the result of intentional or unintentional misstatement of the defendant is immaterial, for equity has power to correct it as well in the former as in the latter case."

In *Botsford* v. *McLean* (1866), 45 Barb (N. Y.) 478, it was said: "If one party is trusted to reduce the contract to writing he is bound to do it truly, and any variation from it, either by omitting some of its terms, or by inserting provisions not embraced in it, if not known to the other party and distinctly assented to by him, is a clear fraud."

This statement was quoted with approval by our Supreme Court in *Keller* v. *Equitable Fire Ins. Co.* (1867), 28 Ind. 170, and in *Kemery* v. *Zeigler* (1912), 176 Ind. 660, 96 N. E. 950.

In *Deischer* v. *Price* (1894), 148 Ill. 383, 36 N. E. 105, Deischer induced the mother, and certain brothers and sisters of his deceased wife, to join in the execution of a deed which purported to convey all their interest in the land to him. In the negotiations leading up to the execution of the deed, the only conveyance he had requested them to make, or which they consented to make, was of a life estate with a provision that upon his death such interest was to go back to them. Deischer undertook to have a deed drawn up which would effectuate such conveyance. When the deed was presented to them for their signatures, they signed it without examination. In discussing the right to a reformation of the deed and the facts in that case, the court said: "The fair conclusion from all the evidence is, that at the time the deed was executed, Deischer, as well as the complainants, supposed the deed to be so drawn as to effectuate the intention of the parties, and therefore that the mistake was mutual. But if it should be admitted that he, at the time, was aware of the terms and legal effect of the deed, and that the mistake was wholly on the part of the complainants, his position would in no respect be improved. He must in that case have known that the complainants were executing . . . under a mistake, brought on by his own agency, and his conduct would then be a fraud, which coupled with the mistake into which he had led the complainants, would entitle them to a reformation of the deed."

In *Williams* v. *North German Ins. Co.* (1885), 24 Fed. 625, the court announced the rule to be that: "Where an instrument fails to represent what both parties intended to have it represent, and one party has drawn up

the instrument, and the other party merely accepted it, and the fault was on the part of the party drawing up the instrument, it can be reformed. It would be a harsh rule if a person applying to an insurance agent, who is supposed to know the legal value of the language used in such policies, which he is drawing up every day, and who is supposed to know exactly what is desired, if that agent fails to do that which was intended, it would be harsh to say that the instrument shall not be reformed, and that chancery shall not give relief."

For other leading cases on this subject see *Zarecki* v. *Guarantee Realty Co.* (1914), 82 N. J. Eq. 489, 89 Atl. 513; *Bradshaw* v. *Provident Trust Co.* (1916), 81 Ore. 55, 158 Pac. 274; *Archer* v. *California Lumber Co.* (1893), 24 Ore. 341, 33 Pac. 526; *Albany City Sav. Inst.* v. *Burdick* (1881), 87 N. Y. 40; *Parker* v. *Jenks* (1883), 36 N. J. Eq. 398; *Bull* v. *Titsworth* (1878), 29 N. J. Eq. 73.

The failure of appellant to read the mortgage before signing it and thus discovering the fraudulent conduct of appellee does not disentitle her to relief. As was said in *Lloyd* v. *Hulick* (1905), 69 N. J. Eq. 784, 63 Atl. 616, 115 Am. St. 624: "In the transaction of business men ordinarily deal with one another in the belief that each is honest. If the opposite belief prevailed in such dealings attempted frauds would rarely be successfully carried into execution and courts would seldom be called upon to grant relief against them. Failure to discover an intended fraud before it has been actually perpetrated must necessarily exist in every case where the courts are appealed to to relieve the wronged party from its effects, and the fact that the exercise of a greater degree of prudence on the part of him who has been defrauded would have prevented the fraud from being successfully carried through affords no ground for refusing relief."

Appellee's complaint is not based upon the theory

that appellant, by signing the mortgage, became obligated to pay the mortgage debt. The complaint does not allege any promise on her part to pay such debt. It alleges that the notes mentioned in the complaint and the interest coupons were signed by Roy L. McNair and that the defendants Selvage and Selvage had, as a part of the purchase price of the land, assumed and agreed to pay the mortgage, and asks for a personal judgment against the three defendants. The only relief asked as to appellant is, that the mortgage be foreclosed as to her. Under the facts as disclosed by the undisputed evidence, appellant was entitled to a decree reforming the mortgage as asked in her cross-complaint.

Judgment reversed, with direction to sustain appellant's motion for a new trial and for further proceedings.

## ON MOTION TO MODIFY MANDATE.

McMahan, P. J.—Motion to modify mandate sustained, and, by agreement, the mandate is modified so as to read as follows:

Judgment reversed in so far as it adjudges that plaintiff recover a personal judgment against appellant Mae F. McNair, and in so far as it orders that any deficiency upon the sale of the real estate shall be made out of the property of appellant and in so far as it adjudges that she is entitled to nothing on Paragraphs II and III of her cross-complaint.