FIRST EQUITY SECURITY LIFE INSURANCE COMPANY ET AL. *v.*
LILLIAN I. KEITH.

[No. 1-774A107. Filed June 10, 1975.]

*John H. Heiney, Rotherberg, Gallmeyer, Fruechtenicht & Logan,* of Fort Wayne, for appellant.

*J. Lloyd Fitzpatrick, Fitzpatrick, Chambers & Waller,* of Washington, for appellee.

LOWDERMILK, J.—This is an appeal from the trial court's refusal to reform the terms of a life insurance policy. The cause was initiated by the filing of a "Complaint on a Life Insurance Policy" by appellee, Lillian Keith. The defendant in that action, First Equity Security Life Insurance Company (First Equity), filed an Answer and "Cross-Complaint for Reformation of Contract" on October 18, 1971. The Cross-Complaint for Reformation was tried to the trial court on October 30, 1973, and the original claim of Mrs. Keith is still pending in the Daviess Circuit Court. The trial court entered judgment against First Equity on its cross-complaint for reformation. First Equity herein appeals the overruling of its timely filed motion to correct errors.

First Equity is a stock company authorized to write life insurance in the State of Indiana. It issued a life insurance

policy on April 24, 1969, to Samuel E. Keith, husband of the appellee. That policy, termed by the company as an "Ambassador 500", was issued pursuant to an application made by Samuel Keith and a subsequent medical examination. The application was completed by Harry Scheid, a sales agent for First Equity.

Samuel Keith died on June 6, 1971, of coronary thrombosis, and the policy was submitted to First Equity for payment. First Equity introduced evidence showing that it was discovered at the time the policy was submitted for payment that a mistake had been made in the preparation of the policy for issuance. The terms of the policy as issued provided that the "initial amount" was $8,250.00 and the "ultimate amount" was $16,500, whereas the alleged proper provisions would have reversed these figures. Mrs. Keith was advised of this alleged error, but brought suit to recover on the policy as it was written.

The significance of the transposition of these two figures is that it results in a doubling of the payment owed to Mrs. Keith. The policy provides that:

> "In addition to the Ultimate Amount, the company agrees to pay to the beneficiary an additional sum equal to the Ultimate Amount, specified in the Policy Specifications, if your death occurs during the first ten policy years."

Since the parties stipulated that Mr. Keith did die during the first ten years of the policy, the discrepancy which First Equity here asserts is that the Policy as it reads provides that Mrs. Keith should recover $33,000 (twice the Ultimate Amount), whereas it is asserted that the intention of the parties was that the Ultimate Amount should be $8,250.00, and that Mrs. Keith is therefore entitled to only $16,500.

First Equity contends that the trial court's refusal to reform the life insurance policy was contrary to the evidence and to the law. An additional issue, not raised by the parties on appeal, is whether this judgment is properly reviewable at this time, in light of the provisions of Ind. Rules of Procedure, Trial Rule 54(B).

Although the issue is not raised by Mrs. Keith, it is apparent from the record that this appeal presents a procedural defect. This defect involves the propriety of pursuing an appeal from a judgment which disposes of less than all of the claims presented to the trial court. TR. 54(B) provides, in pertinent part, as follows:

> "When more than one claim for relief is presented in an an action, whether it is a claim, counter-claim, cross-claim or third-party claim . . . the court may direct the entry of a final judgment as to one or more but fewer than all of the claims . . . only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims, . . . shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims. . . . A judgment as to one or more but fewer than all of the claims . . . is final when the court in writing expressly determines that there is no just reason for delay, and in writing expressly directs entry of judgment, and an appeal may be taken upon this or other issues resolved by the judgment; but in other cases a judgment, decision or order as to less than all of the claims, . . . is not final."

The explicit language of this rule indicates that a judgment as to less than all of the issues is an interlocutory judgment, and does not become final and appealable until the trial court (1) in writing expressly determines that there is no just reason for delay, and (2) in writing expressly directs the entry of judgment thereon. See Harvey, Ind. Practice § 56.9; Moore, Federal Practice § 54.28; Wright & Miller, Federal Practice & Procedure § 2654. This interpretation was recently applied by this court in *Geyer* v. *City of Logansport* (1974), Ind. App., 317 N.E.2d 893. That case involved an involuntary dismissal as to less than all of the parties, and this court reviewed several federal decisions and authorities and concluded that:

> "In looking at the order of dismissal which City urges us to consider as a final judgment, we note that it is not accompanied by an express determination that (1) there

is no just reason for delay and (2) an express direction of entry of judgment. Therefore, in view of Rule TR. 54(B), the Federal Case Law interpreting federal rule 54(B), and the comments of Dean Harvey, we must conclude that the order of dismissal as to the City was not a final judgment, that it would not have been appealable at the time it was made, and was not appealable until judgment was entered disposing of the entire case as to all issues and all parties. . . ." 317 N.E.2d at 896.

In the instant case, the trial court failed to make the required express determination, and instead made only the following entry of judgment:

"The Court having had under consideration the Cross-Complaint for Reformation filed by the defendant First Equity Security Life Insurance Company and the plaintiff's answer thereto and having duly considered the evidence and the exhibits presented by the parties at trial on October 30, 1973, and now being duly advised in the premises finds that the defendant has failed to meet the burden of proof and that the prayer thereof should be denied.

IT IS, THEREFORE, CONSIDERED, ORDERED AND ADJUDGED that the prayer of defendant's Cross-Complaint for Reformation be and hereby is denied."

In view of the trial court's failure to make the two express determinations required by TR. 54(B), this judgment as to less than all of the claims before the trial court constituted an interlocutory judgment, and is not appealable at this time.

However, Ind. Rules of Procedure, Appellate Rule 4(E) provides that:

"No appeal will be dismissed as of right because the case was not finally disposed of in the court below as to all issues and parties, but upon suggestion or discovery of such a situation the appellate tribunal may, in its discretion, suspend consideration until disposition is made of such issues, or it may pass upon such adjudicated issues as are severable without prejudice to parties who may be aggrieved by subsequent proceedings in the court below."

In order to facilitate the speedy disposition of this case, we will consider the merits of the case at this time. The adjudicated substantive issue has been fully briefed and

argued, and since it is clearly severable, no prejudice will result to the parties.

The only issue to be decided is whether the trial court properly refused to reform the life insurance policy as requested by the appellant, First Equity. The propriety of reforming a contract is controlled by several recognized rules, in addition to the general equitable principles which apply whenever a court is requested to invoke its equity jurisdiction.

In Indiana, a trial court is permitted to reform written documents only in cases in which one party mistakenly executed a document which did not express the true terms of the agreement, and the other party has acted under the same mistake, or has acted fraudulently or inequitably while having knowledge of the other party's mistake. This rule is recognized in *Pearson* v. *Winfield* (1974), 160 Ind. App. 613, 313 N.E.2d 95, in which the following comments are made:

> "In Indiana, equity has jurisdiction to reform written documents in only two well defined situations:
>
> (1) Where there is a mutual mistake, — that is, where there has been a meeting of the minds, and agreement actually entered into, but the contract, deed, settlement, or other document, in its written form does not express what was really intended by the parties thereto; and,
>
> (2) Where there had been a mistake of one party, accompanied by fraud or inequitable conduct by the remaining parties.
>
> *Citizens National Bank of Attica* v. *Judy, et al.* (1896), 146 Ind. 322, 43 N.E. 259." 313 N.E.2d at 98.

See also, *Stack* v. *Commercial Towel & Uniform Service, Inc.* (1950), 120 Ind. App. 483, 91 N.E.2d 790 (mutual mistake); *Pike* v. *Pattee* (1936), 103 Ind. App. 83, 2 N.E.2d 420 (fraud or mistake); *Hammond Hotel & Improvement Company* v. *Perrin* (1933), 96 Ind. App. 311, 184 N.E. 906 (mistake or inequitable conduct); *McNair* v. *Public Savings Insurance Co. of America* (1928), 88 Ind. App. 386, 163 N.E. 290 (mistake or fraud). Similarly, a mistake by the scrivener will permit reformation of the instrument,

wherein it is logically indicated that both parties were mistaken as to the actual contents of the instrument. *Allen v. Bollenbacher* (1912), 49 Ind. App. 589, 97 N.E. 817.

The relevant factors which must be proven by a party seeking reformation of an instrument were recently summarized in the *Pearson* decision as follows:

> "A party seeking reformation on the ground of mutual mistake must establish by clear and satisfactory proof the true intentions common to all parties to the instrument, that a mistake was made, and that the mistake was mutual and consequently the instrument, as written, does not state the true intention or agreement of the parties.
>
> The primary purpose of reformation is to effectuate the common intentions of all parties to an instrument which were incorrectly reduced to writing. It follows that a grant of reformation is necessarily predicated upon a prior understanding between all parties in all essential terms. Otherwise, there would be no standard to which an instrument could be reformed." 313 N.E.2d at 99.

As stated in *Pearson*, First Equity was required to show (1) the true intentions of the parties, (2) the mistake on the part of First Equity in the preparation of the life insurance policy, and (3) either a similar mistake on the part of the insured, Samuel Keith, or inequitable conduct on his part.

The trial court was bound to determine whether the evidence and reasonable inferences therefrom constituted the requisite "clear and sufficient evidence" to support First Equity on its burden of proving that reformation was required in order to effectuate the true intentions of *both* parties.

The trial court held that First Equity had failed to carry its burden of showing these points, and entered judgment for Mrs. Keith on the cross-complaint for reformation.

First Equity's only ground for appeal was that there was insufficient evidence to support the trial court's findings and judgment.

When confronted with an assertion that there was insufficient evidence to support the trial court's findings and judg-

ment, this court, as a reviewing tribunal, neither weighs conflicting evidence, nor resolves questions of credibility of witnesses, but rather, accepts only that evidence most favorable to appellees, together with all logical inferences deducible therefrom to determine if each essential element upon which the trial court's decision is based is supported by substantial evidence of probative value. *Pearson* v. *Winfield* (1974), 160 Ind. App. 613, 313 N.E.2d 95; *In Re Estate of Barnett* (1974), 159 Ind. App. 491, 307 N.E. 2d 490.

First Equity refers this court to several items of documentary and testimonial evidence which established a mistake on the part of First Equity. Examples of this type of evidence are as follows: James Eckman, President of First Equity, testified that he could "instantly" determine that the amounts had been transposed because the initial amount is always twice the ultimate amount; the "worksheet" used by First Equity in preparing Mr. Keith's policy recited that the ultimate amount of the policy was to be $8,250.00; the "policy receipt and acknowledgement form" recited that the ultimate amount was $8,250.00; Table B "clearly" shows that a person who, as in the case of Mr. Keith, was 53 years of age at the time he obtained the life insurance would receive $1,650.00 per unit during any of the first ten policy years; Mr. Keith was paying slightly greater than $1,000.00 per year as a premium for the life insurance policy, and that amount would purchase an ultimate amount of $8,250.00 according to the calculation tables upon which the policy was premised; and, James Eckman, President of First Equity, informed Lillian Keith of the discovered error by a letter dated soon after the receipt of the policy for payment.

First Equity argues that in light of this and other evidence, it was improper for the trial court to refuse to reform the instrument to correct this alleged error. First Equity cites this court to cases which have held that the trier of fact may not reject evidence which is uncontradicted and wholly

in favor of the claimant. As noted above, however, it was not necessary for the trial court to reject this evidence for it to reach its determination that the policy should not be reformed, since this evidence fails sufficiently to show that Samuel Keith was either mistaken as to the terms of the policy as written, or that he acted fraudulently or otherwise inequitably with regards to an error in the reduction of the intended agreement to writing.

There was no showing by First Equity as to what the parties had agreed to before the actual policy was issued. Indeed, the only evidence as to what the agreement had actually been at the time of the application was introduced by Mrs. Keith. She called as a witness the agent of First Equity, who testified simply that the written insurance agreement was for $16,500.00. The application for insurance and the medical examination certificate, both of which were signed by Samuel Keith, stated the amount of the insurance to be $16,500 and no other figure appeared on either document. It would seem as probable, if not more probable, that Mr. Keith believed that his *minimum* protection would be $16,500, rather than a minimum protection of only half that amount. Further, the policy itself never defines the terms "ultimate amount" or "initial amount," even in the many pages of fine print following the facing page.

First Equity argues that the "policy receipt" and the "worksheet" show the initial agreement of the parties. While those documents may establish what *First Equity* thought the agreement to be, they do not show what Mr. Keith thought the agreement to be. It was shown that Mr. Keith never saw the work sheet, so that document cannot be evidence as to his intentions in regard to the insurance contract. Mr. Keith did execute and return the "policy receipt" after receiving the completed policy from the agent, but an insured would certainly not expect that any reference to the policy on the face of a "policy receipt" could override the express provisions of the actual policy. Indeed, the "policy receipt" states that

acceptance of the policy is the insured's receipt for the first months premium, and further states that "Receipt of this policy acknowledges the terms and conditions as presented at the time and delivery of the policy." The only reference to the amount of the policy is typed in at the very top as "Ultimate Amount: $8,250" and "Initial Amount: $16,500."

This can hardly overrule the express terms of the insurance contract itself. The form only acknowledged receipt of the policy by the insured, not the terms of that policy.

At best, the evidence would only support an indirect and inconclusive inference as to the knowledge or intent of Samuel Keith. This court is, therefore, unable to hold that the trial court erred in refusing to reform the contract.

Judgment affirmed.

Robertson, C.J. concurs with opinion; Lybrook, J., concurs.

### CONCURRING OPINION

ROBERTSON, C.J.—While agreeing with the majority opinion in this case I feel that a strong caveat should be made to the bench and bar requiring actual compliance with that portion of Ind. Rules of Trial Procedure 54(B) which explicitly requires (1) determination that there is no just reason for delay, and (2) expressly directs the entry of judgment.

Although this court has relied upon Ind. Rules of App. Procedure 4(E) on occasion to bypass the express requirements of TR. 54(B) attorneys should not rely upon this practice in the future for two reasons. First, there is rarely a valid reason to ignore an express requirement of the trial rules. Second, it is foreseeable that at some time there will be a party litigant who will be sorely troubled by the failure to put a judgment in final form prior to appealing. The better practice requires following the appropriate rules of procedure. The failure to do so should not be a cause of surprise at the resulting delays and problems arising therefrom.

NOTE.—Reported at 329 N.E.2d 45.