**ESSEX GROUP, INC., Appellant**
**(Defendant Below)**

v.

**Richard G. NILL, Appellee**
**(Defendant Below)**

and

**Indiana Bank & Trust Company of Fort Wayne, Appellee**
**(Plaintiff Below).**

**No. 02A03–8810–CV–330.**

Court of Appeals of Indiana, Third District.

Sept. 5, 1989.
Rehearing Denied Oct. 19, 1989.

Alan · Verplanck, Barrett & McNagny, Fort Wayne, for appellant.

Edward L. Murphy, Jr., Edward J. Liptak, Miller, Carson & Boxberger, Fort Wayne, for appellee Richard G. Nill.

HOFFMAN, Judge.

Defendant-appellant Essex Group, Inc. appeals from a summary judgment in favor of defendant-appellee Richard Nill. In granting summary judgment, the Allen Superior Court determined that Nill was entitled to a lump sum distribution of the monies in a pension auxiliary fund credited to him.

The pension plan which is the subject of the instant dispute was created in 1961 when Nill, as president of Fort Wayne Tool and Die, Inc., negotiated a Trust Agreement to provide retirement and death benefits to salaried employees of the company. The Trust Agreement required the Trustee to divide the trust funds into two accounts, termed the General Fund and the Auxiliary Fund. The General Fund was to be used to pay annual premiums on insurance policies on the lives of the participating employees. In the Auxiliary Fund, the Trustee was to accumulate funds for the account of each individual, to pay upon retirement the premium necessary to convert the individual's life insurance policy into an annuity which would provide monthly income for the remainder of the participant's lifetime.

In early 1970, Essex Group, Inc. (Essex) became the sole shareholder of Fort Wayne Tool and Die, Inc. (Fort Wayne) through a non-taxable stock exchange. As a part of that transaction, Nill entered into an employment agreement with Fort Wayne and Essex. Pursuant to the terms of the contract, Nill agreed to serve as president and chief executive officer of Fort Wayne or the division of Essex which would continue operations in the event of dissolution of Fort Wayne. The agreement further provided that Nill would be entitled to receive all vacations, pension, insurance and other fringe benefits which he had received from Fort Wayne.

Nill retired from his position as president and chief executive officer in June of 1976, when he was 60 years old. At the time of his retirement, Nill requested a lump sum disbursement of the monies accumulated for his account in the Auxiliary Fund. Essex responded that the Trust Agreement did not provide for lump sum distribution.

The Trustee, Indiana Bank and Trust Company of Fort Wayne, brought a declaratory judgment action in order to receive direction as to what disbursement should be made to Nill from the Auxiliary Fund. Nill and Essex were named as defendants in the action.

Nill claimed entitlement to the monies in his Auxiliary Fund account under two separate theories. First, Nill contended that the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1002(23), (35) (1982), mandated disbursement of the monies in the Auxiliary Fund in excess of the amount necessary to convert Nill's insurance policy into an annuity. In accordance with this Court's instructions, the trial court granted partial summary judgment in favor of Essex on Nill's ERISA claim. *Essex Group, Inc. v. Nill* (1984), Ind.App., 462 N.E.2d 1334.

In the alternative, Nill argued that the drafter of the Trust Agreement had omitted a provision which would authorize the payment of the excess monies to Nill and that the instrument should be reformed to include that provision. Both Nill and Essex moved for summary judgment on the claim for reformation of the Trust Agreement. From the summary judgment in favor of Nill, Essex perfected this appeal.

The issues raised on appeal have been consolidated and restated as follows:

(1) whether the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982 and Supp. V 1987), is applicable to Nill's reformation claim, so as to preclude modification of the Trust Agreement and to preclude the award of a monetary judgment to Nill;

(2) whether Essex was a bona fide purchaser against which the Trust Agreement could not be reformed;

(3) whether there was an absence of employer consent to a lump sum disbursement, rendering the trial court's judgment erroneous; and

(4) whether a lump sum disbursement upon early retirement was not allowed under the Trust Agreement as reformed.

Essex presents a number of arguments against reformation and lump sum distribution based upon the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (1982 and Supp. V 1987). Nill responds that his claim for reformation is governed by state law. A threshold issue, then, concerns the applicability of ERISA to the reformation question.

ERISA states in pertinent part:

"(a) *Except as provided in subsection (b) of this section,* the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

(b)(1) *This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975."* (Emphasis added.)

29 U.S.C. § 1144(a) and (b)(1) (1982).

Thus a claim that arises from acts or omissions which occurred prior to January 1, 1975 is not controlled by the provisions of ERISA.

In the instant case, Nill urged reformation of the Trust Agreement to include a lump sum distribution provision that was inadvertently omitted at the time the agreement was drafted in 1961. The basis for Nill's reformation claim was an omission which occurred before the preemptive date of ERISA. Accordingly, state law is controlling. *See, e.g., Quinn v. Country Club Soda Co.* (1st Cir.1981), 639 F.2d 838 (employee's complaint, which was based on course of conduct prior to 1975, was governed by state law).

▪ The next appellate contention raised by Essex challenges the appropriateness of reforming the Trust Agreement. In Indiana, a trial court is permitted to reform written agreements in those cases where one party mistakenly executed a document which did not express the true terms of the agreement, and the other party acted under the same mistake or acted fraudulently or inequitably while having knowledge of the first party's mistake. *First Equity Sec. Life Ins. Co. v. Keith* (1975), 164 Ind.App. 412, 417, 329 N.E.2d 45, 48. Similarly, a mistake by the scrivener will permit reformation of the instrument where it is logically indicated that both parties were mistaken as to the actual contents of the instrument. *Id.* at 417–418, 329 N.E.2d at 49.

Essex does not dispute that the parties intended the Trust Agreement to contain a clause allowing lump sum distribution. In fact, in a letter outlining the provisions of the proposed retirement plan, the drafter of the Trust Agreement expressly mentioned lump sum disbursement:

"In lieu of all other benefits the employee at retirement may with the employer's consent take the sum accumulated to his account out in one sum; under present Revenue rulings on a long term capital gains tax basis. To provide a monthly income of $266.40 at 65 for 10 years certain and as long as the employee lives, requires an accumulation of $42,560. This is therefore the sum available in lieu of all other benefits."

Nill believed that the lump sum provision had been included in the Trust Agreement and did not learn of its omission until the time of his retirement.

▪ Although the undisputed facts indicate the existence of a scrivener's error which is a proper subject for reformation, Essex maintains that the mistake may not be corrected against it because it was a bona fide purchaser of shares in Fort Wayne. In general, a mistake in a written instrument will not be corrected against a bona fide purchaser for value without notice. *Pence v. Armstrong* (1883), 95 Ind. 191, 197. Yet protection against reformation does not extend to a bona fide purchaser unless there is a showing that the purchaser relied upon the instrument sought to be reformed.

*Cf.* 66 Am.Jur.2d *Reformation of Instruments* § 65 (1973) (Reformation may be granted against bona fide purchasers if they will not be prejudiced thereby); Restatement (Second) of Contracts § 155 comment f (1981) (Reformation is denied only where persons have relied on the finality of the consensual transaction under which they acquired an interest in property);

*Rinehardt v. Reifers* (1902), 158 Ind. 675, 64 N.E. 459 (Reformation precluded by mortgagee's bona fide reliance upon the appearance of the public record).

A review of the evidence before the trial court confirms that there was no reliance

by Essex upon the Trust Agreement as written. At the time of the stock exchange, Essex had no knowledge of the existence of the Trust Agreement or of its contents. Because Essex's purchase of shares was not made in reliance upon an agreement which omitted a provision for lump sum disbursement of benefits, reformation of the Trust Agreement to permit lump sum distribution in no way prejudices Essex as a bona fide purchaser.

■ Essex contends that even if the Trust Agreement were reformed, Nill would not be entitled to lump sum distribution because Essex withheld its consent to such a disbursement. The Trust Agreement as reformed did require the employer's consent before an employee could withdraw the monies accumulated to his account in one sum. However, Nill's "employer" was defined contractually to include both Fort Wayne and Essex. Nill served as president and chief executive officer of Fort Wayne, and his duties included the negotiation of amendments to the Trust Agreement and the granting of permission for lump sum distribution under the agreement. Nill consented on behalf of Fort Wayne to his receipt of benefits in a lump sum when he asked the Trustee to make such a distribution. *See Cushman v. Cloverland Coal, etc., Co.* (1908), 170 Ind. 402, 84 N.E. 759 (where president does act within domain of general objects or business of corporation and within scope of usual duties of chief officer, it will be presumed that he had authority to do it). Therefore the requirement of employer consent was satisfied.

Also noteworthy is the provision in Nill's employment agreement that he was entitled to all pension benefits which he would have received from Fort Wayne. Nill would have been entitled to lump sum distribution from Fort Wayne, and the terms of his employment agreement with Essex purported to continue that entitlement. Thus the employment agreement may be read as providing consent by Essex to lump sum disbursement.

■ Lastly, Essex asserts that lump sum disbursement was not allowed under the terms of the Trust Agreement as reformed,

because Nill took early retirement. There is no evidence that the parties intended to restrict lump sum disbursements to normal retirement situations. The drafter of the Trust Agreement included no such limiting language in his correspondence summarizing the various provisions of the proposed retirement plan, although he did use as an example retirement at age 65. When specifically questioned, the drafter acknowledged that an employee taking early retirement could elect lump sum distribution. The fact that Nill retired at age 60 did not foreclose his receipt of benefits in one sum.

The Allen Superior Court properly reformed the Trust Agreement to include a clause authorizing lump sum disbursement, and the court correctly awarded Nill the monies credited to his account in the Auxiliary Fund as of the date of his retirement. The summary judgment in favor of Nill is affirmed.

GARRARD, P.J., and ROBERTSON, J., concur.